DR. HARRY RICKENBACKER, PLAINTIFF v. DR. R. DONALD COFFEY, JR., DEFENDANT

No. 9013SC879

(Filed 2 July 1991)

**Libel and Slander § 11 (NCI3d) — statements during pre-deposition conference — absolute immunity**

Allegedly slanderous statements made by defendant dentist about plaintiff dentist to an attorney representing a patient during a pre-deposition conference in a dental malpractice case were absolutely privileged and thus not actionable where defendant treated the patient to remedy the allegedly negligent treatment by other dentists; plaintiff had been retained as an expert witness in the patient's pending malpractice action; and the statements were relevant and pertinent to the pending malpractice litigation.

**Am Jur 2d, Libel and Slander §§ 232, 236, 237, 248.**

APPEAL by plaintiff from Order and Judgment entered 25 May 1990 by *Judge Giles R. Clark* in BRUNSWICK County Superior Court. Heard in the Court of Appeals 20 February 1991.

*Brenton D. Adams for plaintiff appellant.*

*Yates, McLamb & Weyher, by Dan J. McLamb and Derek M. Crump, for defendant appellee.*

COZORT, Judge.

Plaintiff is a dentist who was a potential expert witness in a malpractice action. Defendant was a dentist who treated the patient after the alleged malpractice occurred. Plaintiff sued defendant for defamation, alleging that defendant made slanderous statements about plaintiff to an attorney representing the alleged malpractice patient during a pre-deposition conference. The trial court granted summary judgment for defendant. Finding defendant's statements to be absolutely privileged, we affirm.

The case below arose in the course of an action in which Bernard and Barbara Williams sued Fulp Dental Center and American Dental Center (Fulp Dental Center) and two dentists individually for alleged negligent treatment of Bernard Williams in 1985 and for loss of consortium. After the alleged malpractice occurred, Bernard Williams was treated by Dr. R. Donald Coffey, Jr. In their litigation against Fulp Dental Center, the Williamses were represented by Attorney Lynn Fontana. The complaint in that action was filed 14 June 1988.

To further the litigation against Fulp Dental Center Fontana's law firm retained Dr. Harry Rickenbacker "as an expert for the purpose of evaluating the claim [of Bernard Williams] and, to give testimony, if requested, as to his findings and opinions arising out of his investigation."

On 16 January 1989, Fontana held a pre-deposition conference with Dr. Coffey. During their conference Fontana asked Dr. Coffey whether he knew Dr. Rickenbacker. This case originated in Dr. Coffey's response. On 22 November 1989, Dr. Rickenbacker filed a complaint alleging that Dr. Coffey had replied to Fontana as follows:

"Rickenbacker's girlfriend was arrested for prescribing drugs for him." Dr. Coffey also said that he: "heard that Bill Ragsdale had asked Rickenbacker on the stand if he had ever been

convicted of a felony — Rickenbacker wouldn't answer, the court recessed and Rickenbacker disappeared."

Dr. Rickenbacker alleged that Dr. Coffey's statements were false and slanderous.

Dr. Coffey answered and asserted, among other defenses, that his statements were made in connection with pending litigation, that the statements were pertinent and relevant to the litigation, and, thus, the "statements were absolutely privileged." Dr. Coffey moved for summary judgment supporting his motion for summary judgment with an affidavit which gave the following account of his conference with Fontana:

6. During this private conference with Ms. Fontana, I openly discussed all aspects of my treatment of Bernard T. Williams with her and answered her questions regarding Bernard T. Williams' injuries which were the subject of the pending Williams litigation.

7. Also during this private conference, Ms. Fontana informed me that she had retained Dr. Harry Rickenbacker as an expert to testify on behalf of Bernard T. Williams in the pending Williams litigation.

8. Ms. Fontana asked me whether I knew Dr. Rickenbacker and I replied that I thought there was a question relating to his credibility as an expert witness in giving testimony in connection with a lawsuit.

9. When Ms. Fontana asked what I meant by the above statement, I told her that I was present in the courtroom during a trial several years ago in which Dr. Rickenbacker was testifying as the plaintiff's expert and I observed Dr. Rickenbacker refuse to answer questions regarding whether he had ever been convicted of a felony which were being posed to him by attorney George Ragsdale. Additionally, I told Ms. Fontana that someone had told me that Dr. Rickenbacker had been associated with a female physician in the Wilmington area who had gotten into some trouble with her license because of problems with prescribing certain medications.

10. I have never discussed Dr. Rickenbacker with Ms. Fontana at any time other than this one litigation conference.

## RICKENBACKER v. COFFEY

[103 N.C. App. 352 (1991)]

In response to Dr. Coffey's motion, Dr. Rickenbacker submitted an affidavit from Fontana averring that Dr. Coffey's statements to her were summarized in a file memorandum she prepared 17 January 1989. The memorandum reads in part as follows:

> I met with Dr. Coffey yesterday at about 2:45 p.m. in his office. Dr. Coffey is the oral surgeon who performed the debridement and sequestrectomy (removal of part of jaw bone).
>
> \* \* \* \*
>
> I asked Dr. Coffey if he had ever talked to Dr. Garrabrant about Mr. Williams. He said no, Majors is the only one from that group that he had talked to. I asked him if he had talked to anyone else about Mr. Williams. He said that he had spoken with one Wayne Beavers, a dentist in Cary. I asked him how he happened to talk to him and he said that he thought Dr. Fulp had had him look at the case.
>
> I asked Dr. Coffey if he knew of a dentist named Rickenbacker. He said that the last he heard, Rickenbacker's girlfriend was arrested for prescribing drugs for him. He also heard that Bill Ragsdale had asked Rickenbacker on the stand if he had ever been convicted of a felony. Rickenbacker wouldn't answer, the court recessed, and Rickenbacker disappeared, according to Dr. Coffey.
>
> I asked Dr. Coffey what the first IV was that Mr. Williams had when he was hospitalized the first time. He indicated that it was Penicillin and Genomycin [sic]. I asked him what affect that had on the bacteria in Mr. Williams' ostyomyelitis [sic]. He said it probably wouldn't have gotten the anorobic [sic] bacteroids [sic]. I asked Dr. Coffey whether he knew that Mr. Williams had told the dentist that he had had chills and a fever, and that the dentist had not taken his temperature to determine whether there was a systemic infection. Dr. Coffey said that his office doesn't take the temperature of people with toothaches. He said if somebody came in here now with ostyomyelitis [sic] we wouldn't take the temperature. He said an ostyomyelitis [sic] patient typically has a temperature that will spike up and down. One day it may be 99 and the next day over 100. He said with Mr. Williams being a two-pack-a-day smoker, a temperature of 99 would probably be normal for him.

RICKENBACKER v. COFFEY

[103 N.C. App. 352 (1991)]

In response to defendant Coffey's request for admissions, Dr. Rickenbacker admitted that Fontana met with Dr. Coffey while the Williamses' litigation against Fulp Dental Center was pending; that Dr. Coffey had treated Bernard Williams after his allegedly negligent treatment by Fulp Dental Center; that Fontana met with "Dr. Coffey in part to discuss [his] subsequent treatment of Bernard T. Williams"; and that Dr. Rickenbacker had been retained as an expert by the Williamses for the purposes of their litigation against Fulp Dental Center.

On 25 May 1990, the trial court• granted summary judgment in favor of defendant Coffey.

On appeal Dr. Rickenbacker contends that no privilege attaches to the occasion upon which Dr. Coffey made his allegedly slanderous remarks. We disagree.

We note initially that an absolute privilege protecting a defendant from liability for defamation "attaches by reason of the setting in which the defamatory statement is spoken or published. The privilege belongs to the occasion." *R. H. Bouligny, Inc. v. United Steelworkers of America*, 270 N.C. 160, 171, 154 S.E.2d 344, 354 (1967). In *Jarman v. Offutt*, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954), the court summarized the privilege attaching to judicial proceedings as follows:

> The general rule is that a defamatory statement made in due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice.

> As to what constitutes a judicial proceeding within the rule of absolute privilege, it is generally held that privilege is not restricted to trials in civil actions or criminal prosecutions, "but includes every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or *quasi*-judicial powers."

> Ordinarily, statements made in an affidavit which are pertinent to matters involved in a judicial proceeding, or which the affiant has reasonable grounds to believe are pertinent, are privileged, and, although defamatory, are not actionable. [Citations omitted.]

RICKENBACKER v. COFFEY

[103 N.C. App. 352 (1991)]

If pertinent or relevant, statements in pleadings and other papers filed with the court are absolutely privileged, and the question of relevancy is a question of law for the court. *Scott v. Veneer Co., Inc.*, 240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954).

In *Burton v. NCNB*, 85 N.C. App. 702, 706, 355 S.E.2d 800, 802 (1987), this Court "addressed the question of whether out-of-court communications between parties or their attorneys during the course of a judicial proceeding are . . . absolutely privileged." The Court held as follows:

> To fail to extend the absolute privilege to out-of-court statements which are between parties to an action or their attorneys and which are relevant to the proceeding would hinder the disclosure of facts necessary to the disposition of the suit and, thus, discourage settlement. Therefore, if an out-of-court statement is (1) between parties to a judicial proceeding or their attorneys and (2) relevant to the proceeding, it is absolutely privileged and not actionable on grounds of defamation.

*Id.* at 706, 355 S.E.2d at 802-03. As for statements made by the attorney for one party to the attorney for another party, in anticipation of litigation, this Court has held "that an absolute privilege exists not only with respect to statements made in the course of a pending judicial proceeding but also with respect to communications relevant to proposed judicial proceedings." *Harris v. NCNB*, 85 N.C. App. 669, 674, 355 S.E.2d 838, 842 (1987). The Court noted that its "holding is in harmony with those of numerous other jurisdictions which have extended the protection of absolute privilege to relevant communications made preliminary to proposed litigation . . . ." *Id.* at 674, 355 S.E.2d at 843.

The issue of privilege for statements by a witness or potential witness to an attorney for one of the parties to a pending lawsuit has not been addressed in North Carolina. However, the subject is addressed by the Restatement (Second) of the Law of Torts (1977). The Restatement provides in pertinent part as follows:

**Witnesses in Judicial Proceedings**

**A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial pro-**

**ceeding in which he is testifying, if it has some relation to the proceeding.**

\* \* \* \*

e. As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding.

Restatement (Second) Torts § 588 and comment e (1977). We find the rule expressed in the Restatement to be a logical and consistent extension of our existing law.

In the case below Dr. Coffey was the dentist from whom Bernard Williams sought treatment to remedy allegedly negligent treatment. Dr. Coffey would have been a logical, almost an indispensable, witness in the trial of the Williamses' action against Fulp Dental Center. Dr. Coffey was deposed by the Williamses' counsel, and the allegedly slanderous statements were made during a predeposition conference held at the request of the Williamses' counsel. In view of Dr. Rickenbacker's status as an expert retained for purposes of the lawsuit against Fulp Dental Center, Dr. Coffey's allegedly slanderous statements were relevant and pertinent to the litigation. Accordingly, we hold that Dr. Coffey's statements about Dr. Rickenbacker, when made to the Williamses' counsel, were absolutely privileged.

The trial court's Judgment of 25 May 1990 is

Affirmed.

Chief Judge HEDRICK and Judge LEWIS concur.