JOHN ROBERT GIBSON v. THE MUTUAL LIFE INSURANCE CO. OF NEW YORK AND RICHARD HINSON

No. COA95-59

(Filed 2 January 1996)

**1. Limitations, Repose, and Laches § 46 (NCI4th)— insurance manager—dismissed—allegations of dishonesty—statute of limitations**

The trial court did not err by granting defendants' summary judgment motions dismissing plaintiff's claims for defamation where the action was filed in state court on 18 November 1993, so that only those statements made on or after 18 November 1992 are actionable under the one year statute of limitations of N.C.G.S. § 1-54(3). Although plaintiff contends that the statute of limitations was tolled by the discovery rule, the fraudulent concealment rule, or the continuing tort exception, plaintiff did not allege fraudulent concealment in his complaint, plaintiff cites no authority for his continuing tort exception, and there is authority in *Price v. Penny Co.*, 26 N.C. App. 249, that the action accrues at the date of the publication. Even assuming that plaintiff's action relates back to his original lawsuit filed in federal court, any defamatory statements must have been committed on or after 25 November 1990 to be actionable, and the majority of the statements occurred before or immediately after plaintiff's February 1990 departure from MONY and are therefore barred.

**Am Jur 2d, Libel and Slander §§ 421-423, 427.**

**What constitutes "publication" of libel in order to start running of period of limitations. 42 ALR3d 807.**

**2. Libel and Slander § 42 (NCI4th)— terminated employee— summary judgment**

The trial court correctly granted summary judgment on four potential defamation actions against defendant MONY and one possible claim against defendant Hinson where two of the claims against MONY are based on affidavits which do not establish a particular individual who made the defamatory statement and which involve statements made after plaintiff was terminated which cannot be imputed to MONY, or refer to a statement made in 1991 which is barred by the statute of limitations. The third statement was actionable *per quod* and there was no evidence of

special damages, and the final incident involves communications made during a break in the course of a deposition, and are protected by the absolute privilege of judicial proceedings.

**Am Jur 2d, Libel and Slander §§ 467-469, 496.**

**Pleading or raising defense of privilege in defamation action. 51 ALR2d 552.**

Appeal by plaintiff from summary judgment in favor of defendants entered 31 October 1994 by Judge W. Steven Allen, Sr. in Iredell County Superior Court. Heard in the Court of Appeals 19 October 1995.

*Allman Spry Leggett & Crumpler, P.A., by David C. Smith and Linda L. Helms and Kilgore & Kilgore, by W.D. Masterson for plaintiff-appellant.*

*Kennedy, Covington, Lobdell & Hickman, by William C. Livingston and Vinson & Elkins L.L.P. by Douglas E. Hamel and Shadow Sloan for defendant-appellee, The Mutual Life Insurance Company of New York.*

*Bennett & Blancato, L.L.P., by William A. Blancato and Stanley P. Dean for defendant-appellee, Richard Hinson.*

McGEE, Judge.

The evidence, in the light most favorable to plaintiff, John Robert Gibson, establishes the following facts. From March 1984 until February 1990, plaintiff was employed by defendant Mutual Life Insurance Company of New York (MONY) as the agency manager of its Charlotte, North Carolina office. Prior to assuming this position, plaintiff had been employed by MONY for fifteen years in various positions and had a superior employment record. In a September 1989 meeting, MONY's regional vice president, Robert Kramer, removed plaintiff from his managerial position, without cause. Kramer also represented to plaintiff that he would be considered for other jobs and that his salary would be continued until February 1990. Plaintiff alleged that during this meeting, Kramer called him a "liar" and claimed he could not be trusted. In February 1990, plaintiff was told that he could only remain with the company as a salesman. Plaintiff rejected this offer and his contract was terminated.

Plaintiff alleges Kramer, as well as defendant Richard Hinson, an agent with MONY since 1956, defamed him by making statements which were intended to "destroy plaintiff's reputation so he would not be able to compete with MONY and Hinson after being driven from MONY's agency." Specifically, plaintiff alleges "defendants have told other persons that plaintiff was dishonest, had stolen $600,000, was under investigation by the IRS [Internal Revenue Service], was fired for theft, drank too much, was never at work, was guilty of nepotism and was a crook."

Plaintiff filed his complaint against defendants MONY and Hinson seeking damages for defamation on 18 November 1993 in Iredell County Superior Court. Defendants filed separate answers in January of 1994 denying liability and contending plaintiff's complaint was barred by the statute of limitations as well as the doctrines of absolute or qualified privilege. In July and September of 1994 defendants Hinson and MONY, respectively, filed motions for summary judgment. On 31 October 1994 the trial court granted defendants' summary judgment motions, dismissing plaintiff's claims with prejudice. From this order, plaintiff appeals.

A trial court may grant a motion for summary judgment only when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (1990); *Ballenger v. Crowell*, 38 N.C. App. 50, 53, 247 S.E.2d 287, 290 (1978). In order to prevail on a summary judgment motion, the moving party must show either "(1) an essential element of plaintiff's claim is nonexistent . . . [2] plaintiff cannot produce evidence to support an essential element of his claim, or . . . [3] plaintiff cannot surmount an affirmative defense which would bar the claim." *Clark v. Brown*, 99 N.C. App. 255, 260, 393 S.E.2d 134, 136-37, (quoting *Shuping v. Barber*, 89 N.C. App. 242, 244, 365 S.E.2d 712, 714 (1988)) *review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). The trial court must construe all evidence in the light most favorable to the non-moving party, allowing the non-moving party to be given all favorable inferences as to the facts. *Moye v. Gas Co.*, 40 N.C. App. 310, 314, 252 S.E.2d 837, 841, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979).

[1] Defendants argue this Court should affirm the trial court's summary judgment order because plaintiff cannot overcome the statute of limitations and privilege defenses. We agree.

The statute of limitation for defamation is one year under N.C. Gen. Stat. § 1-54(3) (1983). In November 1991, plaintiff filed a complaint in federal court against MONY concerning his termination from the company. However, the action filed by plaintiff in state court alleging MONY and Hinson defamed him was not filed until 18 November 1993. Therefore, only those defamatory statements made on or after 18 November 1992 are actionable.

As to defendant Hinson, plaintiff contends "the discovery rule, fraudulent concealment rule, or continuing tort exception" tolls the statute of limitations. We disagree. Plaintiff did not allege fraudulent concealment in his complaint and that issue cannot be considered for appellate review. *See Leffew v. Orrell*, 7 N.C. App. 333, 336, 172 S.E.2d 243, 245-46 (1970) (a party is not allowed to argue a different theory on appeal). Additionally, we note that although plaintiff's brief mentions a continuing tort exception, he cites no authority for this proposition and we need not consider this argument under N.C.R. App. P. 28(b)(5). In fact, our Courts have stated that each publication of defamatory material is a separate tort. *See Sizemore v. Maroney*, 263 N.C. 14, 21, 138 S.E.2d 803, 808 (1964). We also disagree with plaintiff's argument that the statute of limitations will be tolled until plaintiff discovers that defamatory statements have been made. This Court said in *Price v. Penney Co.*, 26 N.C. App. 249, 216 S.E.2d 154, *cert. denied*, 288 N.C. 243, 217 S.E.2d 666 (1975):

> To escape the bar of the statute of limitations, an action for libel or slander must be commenced within one year from the time the action accrues, G.S. 1-54(3), and *the action accrues at the date of the publication of the defamatory words*, regardless of the fact that plaintiff may discover the identity of the author only at a later date.

*Price*, 26 N.C. App. at 252, 216 S.E.2d at 156 (citation omitted) (emphasis added). Since none of the doctrines plaintiff addresses will toll the statute of limitations, we find that any action by Hinson which occurred before 18 November 1992 is time barred.

Plaintiff also argues his defamation claim against MONY relates back to his original lawsuit filed in federal court on 25 November 1991. Assuming, *arguendo*, that plaintiff's 18 November 1993 defamation claim relates back to his original lawsuit, any defamatory statements by MONY must have been committed on or after 25 November 1990 in order to be actionable.

[2] We have examined the statements plaintiff alleges are defamatory and we agree with defendants' arguments that the majority occurred before or immediately after plaintiff's February 1990 departure from MONY and are therefore barred by the statute of limitations. Under the most liberal limitations period (25 November 1990 for MONY and 18 November 1992 for Hinson) there are four potential actions against MONY and one possible claim against Hinson to be addressed.

Evidence of two of the allegations implicating MONY is found in affidavits filed by Clay Smitherman, a field underwriter employed by the MONY Charlotte office for twenty-six weeks during 1991, and by John Morrill, a retired MONY employee who continues to work in the Charlotte MONY office as a consultant. Morrill's affidavit states, "I have occasion to be in the office of MONY's Charlotte Agency, where I have continued to this date [14 October 1992] to hear defamations of Mr. Gibson, including the allegation that he is a 'crook'." Smitherman claims, "I heard Mr. Richard Hinson state that John Robert Gibson was dishonest and that Mr. Gibson had cheated Mr. Hinson. One of the ladies in the agency defamed Mr. Gibson by calling him a crook."

Neither Morrill's nor Smitherman's affidavit establishes a basis upon which MONY can be held liable. Only Smitherman actually identifies a particular individual, Hinson, who allegedly made a defamatory statement. Hinson cannot be held liable for this particular incident because it occurred sometime in 1991 and is therefore barred by the statute of limitations. In Morrill's case, no facts, dates or identity of the person making the statements are included in the affidavit. As MONY points out, all of the statements were made after plaintiff was terminated and therefore, the alleged defamation cannot be imputed to MONY. *See Stutts v. Power Co.*, 47 N.C. App. 76, 81, 266 S.E.2d 861, 865 (1980) (as a matter of law, defamatory remarks made by an employee in the months after plaintiff's discharge were not made within the employee's scope of employment and therefore are not attributable to defendant).

A third affidavit containing evidence implicating MONY was filed by Dale Abshire, a MONY employee who, like Gibson, was terminated from the company. Abshire's affidavit states, "Following my discharge by MONY on January 9, 1991, I called Bob Kramer . . . and asked him to intercede on my behalf. In the course of this conversation Mr. Kramer told me that Bob Gibson had lied to him and could not be trusted." MONY contends this statement is protected under the doc-

GIBSON v. MUTUAL LIFE INS. CO. OF N.Y.

[121 N.C. App. 284 (1996)]

trine of qualified privilege. Even if Abshire's statements are not protected by a qualified privilege, we find that the statements are actionable *per quod* and since there is no evidence of special damages attributable to this particular statement, plaintiff cannot prevail on his defamation claim based on the Abshire affidavit.

Slander may be actionable *per se* or *per quod*. "Defamatory charges which are actionable *per se* raise a *prima facie* presumption of malice and a conclusive presumption of legal injury and general damage, entitling plaintiff to recover nominal damages at least without specific allegations or proof of damages." *Stewart v. Check Corp.*, 279 N.C. 278, 284, 182 S.E.2d 410, 414 (1971). Slander *per quod* arises where the defamation is "such as to sustain an action only when causing some special damage . . . , in which case both the malice and the special damage must be alleged and proved." *Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969).

Among the statements considered actionable *per se* are: (1) an accusation of criminal wrongdoing or an offense involving moral turpitude; (2) a statement impeaching one's trade or profession; and (3) an allegation imputing to one a loathsome disease. *Gibby v. Murphy*, 73 N.C. App. 128, 131, 325 S.E.2d 673, 675 (1985). With respect to a trade or profession, the statement must "touch the plaintiff in his special trade or occupation, and . . . contain an imputation necessarily hurtful in its effect on his business." *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955).

Our Courts have consistently held that "alleged false statements . . . calling plaintiff 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable *per se*." *Stutts*, 47 N.C. App. at 82, 266 S.E.2d at 865. The alleged slander in the Abshire affidavit was "Kramer told me that Bob Gibson had lied to him and could not be trusted." Under *Stutts*, this language is not actionable *per se. Id.* Abshire's affidavit states his conversation with Kramer occurred in January 1991. Plaintiff's own testimony reveals he began working for Acacia, one of MONY's competitors, on 1 March 1990 where he served as the agency manager for approximately four years. During his tenure as the agency manager at Acacia, plaintiff testified that the agency grew from eight agents to between sixteen and twenty-five and the operation grew between two and three hundred percent. This testimony does not suggest plaintiff suffered any pecuniary loss as a result of Kramer's discussion with Abshire. Since plaintiff has not demonstrated he suffered any special damages resulting

GIBSON v. MUTUAL LIFE INS. CO. OF N.Y.

[121 N.C. App. 284 (1996)]

from this conversation, he cannot prevail on his defamation claim as to this incident.

The final incident which plaintiff alleges implicates both MONY and Hinson involves communications made during the course of a deposition on 11 May 1993. On that date Hinson, a defendant in a separate lawsuit filed by another MONY manager, was being deposed in connection with that lawsuit. During the deposition, one of the attorneys asked Hinson a series of questions about his relationship with plaintiff (Gibson). After Hinson responded that the relationship was friendly in the beginning but "[t]owards the end, it was a very bad relationship," Hinson was asked the reasons for the deterioration of the relationship. Hinson responded, "He was fired for dishonesty, and I have learned some other things about him that caused him to eventually get fired." The attorney then asked Hinson if he had proof of the dishonesty or if there was ever an audit conducted to explore the matter.

After Hinson answered that he believed there had been some sort of audit, a short break was requested. It was during this break in the deposition proceedings that Hinson allegedly stated plaintiff was "involved in the embezzlement of approximately $600,000 from MONY and that [he] had reported Gibson to the Internal Revenue Service."

Upon returning to the deposition proceedings, the attorney continued asking Hinson about plaintiff's dishonesty. He asked Hinson if he knew the plaintiff had filed a defamation claim against MONY and he followed this up by asking, "Do you have a personal opinion as to whether or not he [plaintiff] was dishonest . . . [b]y dishonest, I mean, did he steal money from the agency or misappropriate funds." Hinson answered in the affirmative to both questions. The attorney also asked Hinson, "Did you ever contact the Internal Revenue Service with regard to Mr. Gibson?" Hinson responded that someone from the IRS had contacted him. Soon after that question, Hinson declined to answer further questions on this matter.

We hold that under the circumstances, even if Hinson did make the alleged statements, they were protected under the doctrine of absolute privilege. In *Rickenbacker v. Coffey*, 103 N.C. App. 352, 405 S.E.2d 585, *disc. review denied*, 330 N.C. 120, 409 S.E.2d 600 (1991), this Court examined the doctrine of absolute privilege as it relates to judicial proceedings. Quoting *Jarman v. Offutt*, 239 N.C. 468, 472, 80

S.E.2d 248, 251 (1954), we said, "The general rule is that a defamatory statement made in due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice." *Rickenbacker*, 103 N.C. App. at 356, 405 S.E.2d at 587. In *Burton v. NCNB*, 85 N.C. App. 702, 355 S.E.2d 800 (1987), our Court addressed the question of whether out-of-court communications between parties or their attorneys during the course of judicial proceedings are privileged. Our Court stated that "if an out-of-court statement is (1) between parties to a judicial proceeding or their attorneys and (2) relevant to the proceeding, it is absolutely privileged and not actionable on the grounds of defamation." *Burton*, 85 N.C. App. at 706, 355 S.E.2d at 803. The question of whether the statement is relevant to the proceeding is a question of law for the court to decide and "the matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." *Harris v. NCNB*, 85 N.C. App. 669, 672, 355 S.E.2d 838, 841 (1987) (emphasis omitted) (quoting *Scott v. Veneer Co.*, 240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954)).

The 11 May 1993 statements satisfy the requirements set forth in *Rickenbacker*. They were made between parties to a judicial proceeding or their attorneys in that the statements were made during a break, in a conference room in which the parties to the lawsuit and their attorneys were located. Additionally, the statements meet the relevance requirement as they were made in connection with numerous questions Hinson was asked during the course of the deposition. Furthermore, the material was not "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." *Id.*

The trial court did not err in granting summary judgment for defendants.

Affirmed.

Judges MARTIN, John C., and JOHN concur.