JOHN MICHAEL BIOLETTI, Plaintiff v. ADELINA MARY BIOLETTI, Defendant

No. COA09-876

(Filed 1 June 2010)

**Estoppel— judicial estoppel—conversion—contradictory statements of ownership in federal bankruptcy court and state court**

The trial court did not abuse its discretion in a conversion case by applying judicial estoppel and granting summary judgment in favor of defendant in regard to contested funds received from the parties' deceased brother. To allow plaintiff to seek recovery of the now contested monies from defendant would permit him to file contradictory statements of ownership in the federal bankruptcy court and the state court. Plaintiff would receive an unfair advantage because it would be inequitable to allow him to assert the right to recoup an amount in excess of $92,000 when plaintiff only disclosed that he was entitled to $24,797.14 in his filings in the bankruptcy court.

Appeal by plaintiff from a judgment entered 6 April 2009 by Judge Timothy L. Patti in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 November 2009.

*John F. Rudisill and Leslie C. Rawls, for Plaintiff.*

*Franklin S. Hancock, for Defendant.*

ERVIN, Judge.

Plaintiff John Michael Bioletti appeals from an order entered by the trial court on 6 April 2009 granting summary judgment in favor of Defendant Adelina Mary Bioletti. After a careful review of the record in light of the applicable law, we affirm the trial court's order.

## I. Statement of Facts

On 14 October 2005, Plaintiff filed a petition seeking relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina. In his bankruptcy petition, Plaintiff alleged that he did not have any funds with which to pay his creditors. On 27 October 2005, William Bioletti, who was Plaintiff's and Defendant's brother, died. As a result of William Bioletti's death, Plaintiff was entitled to certain "monies and financial

accounts." On 4 November 2005, Plaintiff executed a hand-written agreement transferring his interest in any monies that he was entitled to receive from William Bioletti to Defendant.[1]

The meeting of creditors held in connection with Plaintiff's bankruptcy proceeding occurred on 16 November 2005. On 20 January 2006, the Honorable J. Craig Whitley, United States Bankruptcy Judge, entered an order granting Plaintiff's request for a bankruptcy discharge.[2] On 21 January 2006, Plaintiff filed an amended property schedule in the bankruptcy proceeding which indicated that he had received $24,747.19 as a result of the death of William Bioletti. On 14 July 2007, Judge Whitley issued a final decree officially closing Plaintiff's bankruptcy case.

On 2 October 2008, Plaintiff filed a complaint in the Superior Court of Mecklenburg County in which he sought the entry of a judgment against Defendant "for conversion of monies and fraud in excess of $92,000" and reasonable attorneys' fees. Plaintiff's complaint asserted claims against Defendant for an accounting, for fraud and conversion, for the imposition of a constructive trust, and for punitive damages. In essence, Plaintiff alleged that Defendant had unlawfully converted to her own use monies which he was entitled to receive from insurance policies and retirement accounts owned by William Bioletti.

On 4 December 2008, Defendant filed a motion seeking the dismissal of Plaintiff's claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), or in the alternative, a motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56. According to Defendant, Plaintiff's claims were "barred by the equitable doctrines of laches and judicial estoppel" because Plaintiff had asserted in his complaint "a position and facts . . . that differ from the facts asserted in [the Bankruptcy Court] three years ago." More specifically, Defendant stated:

On October 14, 2005, Plaintiff filed Chapter 7 bankruptcy, and alleged that he did not have any funds available to pay his creditors. . . . Plaintiff benefitted from his assertion and gained a bank-

---

1. According to Plaintiff, the transfer agreement was dictated by Defendant, who then "took [Plaintiff] to a branch bank to have his signature witnessed and notarized." Plaintiff and Defendant sharply disagreed about the circumstances under which this agreement was executed. In light of our decision to uphold the trial court's order, we need not address the factual disputes surrounding the execution of this transfer agreement in any detail.

2. Apparently, Defendant paid all of Plaintiff's debts.

ruptcy discharge. . . . However, Plaintiff now asserts to this Court that he was entitled to the funds he gave to Defendant, alleging that Defendant was only holding them in some sort of trust. These factual positions and assertions are contradictory—one or the other cannot be true. It would be inequitable for Plaintiff to now assert a set of facts different from facts he asserted successfully in another court and from which he benefitted.

Defendant attached a series of exhibits, consisting of documents from Plaintiff's bankruptcy proceedings, and an affidavit to her motion. In her affidavit, Defendant asserted that Plaintiff's "bankruptcy attorney . . . called me and told me that if the Plaintiff inherited anything from William, and then tried to hide it, he would be in trouble with that court because of attempted fraud. ([Plaintiff] had not told the bankruptcy court about the inherited money.)"

On 16 January 2009, Plaintiff filed a reply to Defendant's motion accompanied by certain exhibits, including an amended property schedule from his bankruptcy proceeding, and an affidavit. On 2 February 2009, Plaintiff filed a motion seeking leave to amend his complaint and a proposed amended complaint, which contained the following new allegations:

26A. On October 17, 2005, Plaintiff filed for bankruptcy relief in Bankruptcy No. 05-35662 under Chapter 7 in the United States Bankruptcy Court for the Western District of North Carolina, prior to the death of William Bioletti on October 27, 2005.

26B. After Defendant received monies due Plaintiff from the death of William Bioletti and transferred them to a joint account with Defendant, he amended his Schedules B and C in Bankruptcy No. 05-35662 to show the receipt of monies, *viz.*, "Debtor inherited $24,747.19 from deceased brother, William Bioletti (he passed after the filing date of the debtor)," as shown on the "SCHEDULE B. PERSONAL PROPERTY—AMENDED" and "SCHEDULE C. PROPERTY CLAIMED AS EXEMPT-AMENDED," both signed by him and attached to the "REPORT OF TRUSTEE UNDER BANKRUPTCY RULE 3011, APPLICATION TO DEPOSIT MONIES TO THE REGISTRY ACCOUNT AND APPLICATION FOR DISCHARGE OF TRUSTEE" by Langdon M. Cooper dated 4th of July, 2007, labeled Plaintiff's Exhibit 1 to First Amendment."

. . . .

**BIOLETTI v. BIOLETTI**

[204 N.C. App. 270 (2010)]

26D. Defendant sent sufficient monies to the attorney for Plaintiff in Bankruptcy No. 05-35662 to pay his creditors in full, AND for Plaintiff to receive $9,494.76 back, but these are the only monies that Plaintiff received the benefits that were payable to him from the death of William Bioletti, either from the joint account or any account Defendant deposited said funds in, subject to their understanding that Plaintiff had that his sister, Defendant, was entrusted with said funds for his, not her, benefit.

26E. Defendant was aware that Plaintiff was vulnerable to manipulation, intimidation and deceit due to his low intelligence, his personal developmental disorder and his basic desire to please his family rather than to confront her behavior, and she took advantage of his mental and emotional state to control his money, have him prepare and sign a purported document of gift, leave him subject to large tax assessments and allow him to exist in a state of continued poverty, hunger and need, when, upon information and belief, his brother apparently and undisputedly had left him his sole beneficiary of certain, but not all, insurance polices and retirement benefits to add to his ability to live with some happiness.

The trial court never ruled on Plaintiff's motion for leave to amend his complaint. After consideration of the "briefs and exhibits submitted by the parties," "the court file," and the arguments of counsel, the trial court entered an order granting Defendant's motion for summary judgment[3] on 6 April 2009 on the grounds that, "[t]o allow the Plaintiff to seek to recover the now-contested monies from the Defendant would permit him to file contradictory statements of ownership in the federal bankruptcy court and the state court;" that "[s]uch action should not be permitted;" and that "Plaintiff is estopped from now pursuing these claims against Defendant in state court."[4] Plaintiff noted an appeal to this Court from the trial court's order.

---

3. The trial court expressly recognized that, since it had "considered matters outside [the] pleadings," it should "treat this matter as a motion for summary judgment under N.C. Gen. Stat. § 1A-1, Rule 56(b)."

4. The trial court did not, contrary to the implication of certain statements contained in Plaintiff's brief, make findings of fact in ruling on Defendant's summary judgment motion. Instead, the trial court's factual recitations reflect the facts that the trial court considered to be "undisputed and uncontradicted."

II.  Legal Analysis

A.  Standard of Review

Generally, "[o]ur standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). Summary judgment is also appropriate when the "plaintiff cannot surmount an affirmative defense which would bar the claim." *Gibson v. Mutual Life Ins. Co. of N.Y.*, 121 N.C. App. 284, 286, 465 S.E.2d 56, 58 (1996) (citation omitted). " 'When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party.' " *Jones*, 362 N.C. at 573, 669 S.E.2d at 576 (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). "If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial." *Jones*, 362 N.C. at 573, 669 S.E.2d at 576 (citing *Lowe v. Bradford*, 305 N.C. 366, 369-70, 289 S.E.2d 363, 366 (1982); N.C. Gen. Stat. § 1A-1, Rule 56(e)). "Nevertheless, '[i]f there is any question as to the weight of evidence[,] summary judgment should be denied.' " *Id.* (quoting *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999)).

In addition, we acknowledge that "a trial court's application of judicial estoppel is reviewed for abuse of discretion." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 38, 591 S.E.2d 870, 894 (2004) (citation omitted). This is because "an action pled [which] is barred by a legal impediment, such as judicial estoppel," has "no triable issues of fact as a matter of law." *Whitacre P'ship*, 358 N.C. at 39, 591 S.E.2d at 895 (citation omitted). "Thus, when a trial court has acted within its discretion in applying judicial estoppel, leaving no triable issues of material fact, summary judgment is appropriate." *Id.* As a result, we must determine here whether the trial court abused its discretion by applying the doctrine of judicial estoppel to Plaintiff's complaint. If the trial court did not abuse its discretion in determining that Plaintiff is judicially estopped from seeking to recover the disputed monies from Defendant, there are no triable issues of fact in this case as a matter of law, rendering summary judgment appropriate.

## B. Judicial Estoppel

In *Whitacre P'ship*, the Supreme Court discussed the doctrine of judicial estoppel, which is derived from *New Hampshire v. Maine*, 532 U.S. 742, 149 L. Ed. 2d 968 (2001), as it applies in this jurisdiction. The Court noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Whitacre P'ship*, 358 N.C. at 28, 591 S.E.2d at 888 (citation omitted). The fundamental purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process." *Id.*

[J]udicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation. The doctrine prevents the use of intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.

*Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005) (citation omitted). In *Whitacre P'ship*, the Court identified three factors that may be used to determine if the doctrine applies.

First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship*, 358 N.C. at 29, 591 S.E.2d at 888-89 (citations and quotations omitted). Accordingly, in order to determine whether the trial court properly applied the doctrine of judicial estoppel in order to bar the assertion of Plaintiff's claim in this case, we must first consider whether the position that Plaintiff has taken in the present case is clearly inconsistent with the position that he took in the bankruptcy proceeding. If the positions that he took in those proceedings are inconsistent, we must then consider the other elements required for the appropriate application of judicial estoppel in accordance with well-established principles of North Carolina law.

BIOLETTI v. BIOLETTI

[204 N.C. App. 270 (2010)]

Reduced to its essentials, Plaintiff's challenge to the trial court's order rests on a contention that the record does not establish that he failed to inform the Bankruptcy Court of his interest in the funds that he is seeking to recover through the present civil action, and that the trial court could not appropriately conclude that he took a position in the Bankruptcy Court that was inconsistent with the position that he took in this Court for that reason. In advancing this contention, Plaintiff argues that the factual materials upon which Defendant relied in successfully persuading the trial court to grant summary judgment in her favor were "insufficient to support the [trial] court's finding" due to "(1) lack of a relevant time frame; (2) lack of first-hand knowledge and failure of supporting documents; (3) lack of connection to the funds at issue; and (4) contrary evidence in the court file." After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that none of Plaintiff's arguments are persuasive.

The evidence concerning the payments that Plaintiff received as a result of William Bioletti's death is undisputed. According to the affidavit that he submitted in opposition to Defendant's summary judgment motion, Great Western Retirement Services issued a $14,349.83 check to Plaintiff as the result of William Bioletti's death on or about 15 February 2006. After Defendant brought this check to him, Plaintiff endorsed it and returned it to Defendant. On or about 16 February 2006, the Teachers' and State Employees' Retirement System issued a $37,447.61 check to Plaintiff stemming from William Bioletti's death. Plaintiff endorsed this check and returned it to Defendant after she brought it to him. On or about 19 July 2006, the Teachers' and State Employees' Retirement System issued a $40,354.69 check to Plaintiff as a result of William Bioletti's death. After endorsing this check in blank, Plaintiff gave this check to Defendant. As is evidenced by both the complaint he filed in this case on 2 October 2008 and his affidavit in opposition to Defendant's summary judgment motion, Plaintiff contended that he was entitled to recover in excess of $92,000 from Defendant, all of which originated from insurance contracts, retirement accounts or similar instruments originally owned by William Bioletti.[5]

---

5. The parties disagreed sharply over the circumstances under which Plaintiff endorsed these checks. On the one hand, Plaintiff contended in his affidavit that Defendant told him that the attorney for William Bioletti's estate had told her that Plaintiff needed to endorse the checks and that he believed that, "when the estate was over, that whatever was left, [Defendant] would automatically invest the rest of my money." On the other hand, Defendant indicated in her affidavit that Plaintiff made a gift of the monies in question to her by means of the transfer agreement discussed earlier in this opinion.

On the other hand, the factual materials in the record demonstrate that Plaintiff filed a "no asset" claim for relief under Chapter 7 of the Bankruptcy Code on 14 October 2005. In bankruptcy proceedings, debtors are required to complete a Schedule B form, on which they disclose, among other things, "[c]ontingent and noncontingent interest in the estate of a decedent, death benefit plan, life insurance policy or trust;" "[o]ther contingent or liquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims;" and "[o]ther personal property of any kind not already listed." The fact that Plaintiff did not own or have a claim to the accounts in question as of the date upon which he filed his bankruptcy petition did not absolve him from responsibility for disclosing the existence of these assets to the Bankruptcy Court, since 11 U.S.C. § 541(a)(5) provides that "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date" "by bequest, devise, or inheritance" or "as a beneficiary of a life insurance policy or a death benefit plan" is treated as part of the debtor's bankruptcy estate. Although Plaintiff amended his bankruptcy petition to reflect that Plaintiff "inherited $24,747.19 from deceased brother, William Bioletti (he passed away after the filing date of the Debtor)," he never listed the difference between the $92,000.00 which he seeks to recover in this case and the $24,747.19 which he disclosed on his amended report in any filing with the Bankruptcy Court. On 20 January 2006, Judge Whitley granted Plaintiff a discharge in bankruptcy. Subsequently, on 14 July 2007, Judge Whitley issued a final decree officially closing Plaintiff's bankruptcy proceeding.

A careful examination of these undisputed facts in light of the factors enunciated in *Whitacre P'ship*, 358 N.C. at 29, 591 S.E.2d at 888-89, clearly demonstrates that the trial court did not abuse its discretion in concluding that Plaintiff was judicially estopped from claiming ownership. First, we ask whether "a party's subsequent position [is] clearly inconsistent with its earlier position." The undisputed evidentiary materials in the record clearly reflect that Plaintiff informed the Bankruptcy Court that his interest in the retirement accounts and insurance contracts owned by William Bioletti totaled $24,747.19 and that he failed to disclose the remainder of the claim that he asserted against Defendant despite the requirement that he report "[c]ontingent and noncontingent interests in estate of a decedent, death benefit plan[s], life insurance polic[ies],

or trust[s]" "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims;" and "other personal property of any kind not already listed." Regardless of the reason that the Plaintiff may have had for failing to disclose the additional $67,000 that he has claimed in this case over and above the amount that he reported to the Bankruptcy Court, the simple fact of the matter is that Plaintiff disclosed $24,747.19 received as the result of the death of William Bioletti in the bankruptcy proceeding while claiming the right to recover $92,000 resulting from the death of William Bioletti in this proceeding. As a result, we conclude that the trial court correctly concluded that Plaintiff took inconsistent positions concerning the amount of money that he was entitled to take as the result of the death of William Bioletti in the bankruptcy proceeding and in this case.

Although Plaintiff disputes the validity of the trial court's logic, which we have accepted on appeal, we do not find his arguments to be persuasive. The fact that Plaintiff believes that the conversation that Defendant allegedly had with Plaintiff's bankruptcy attorney could have occurred prior to the receipt of the checks described in greater detail above, the fact that a statement attributed to Plaintiff's bankruptcy attorney may have been hearsay, the fact that the funds in question may not be "inherited" funds, and the fact that Plaintiff did amend his bankruptcy filing on at least one occasion does not change the fact that Plaintiff never disclosed the full extent of his claim to ownership of monies stemming from William Bioletti's death and that, by failing to make such disclosure, Plaintiff effectively asserted that he had no interest in any property passing as the result of William Bioletti's death other than the $24,797.14 amount that he disclosed to the Bankruptcy Court. Thus, we are simply unable to agree with Plaintiff's arguments to the effect that the trial court erred by finding that he took inconsistent positions between the two proceedings or that there are issues of fact as to whether such inconsistent positions were taken.

Secondly, we ask whether "the party has succeeded in persuading a court to accept that party's earlier position." *Id.* After reviewing the relevant portions of the record, we conclude that Plaintiff did, in fact, succeed in persuading the Bankruptcy Court that the value of his interest in monies resulting from William Bioletti's death totaled $24,747.19. Although Plaintiff contends that Defendant "offered no evidence that the bankruptcy court accepted a final inventory and

property distribution that did not account for the life insurance proceeds at issue here," the record clearly reflects that Plaintiff received a discharge in bankruptcy and that Plaintiff never disclosed the full extent to which he claimed to be entitled to take monies stemming from the death of William Bioletti. Thus, we conclude that Plaintiff did, in fact, succeed in persuading the Bankruptcy Court that he was only entitled to receive $24,797.19 as the result of William Bioletti's death.

Finally, we ask whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* Although this Court has no bankruptcy jurisdiction and is reluctant, for that reason, to render an opinion concerning the effect that any understatement of Plaintiff's claim to monies resulting from William Bioletti's death may have had on the outcome of his bankruptcy proceeding, we can safely conclude that, if Plaintiff is allowed to proceed with his claims against Defendant, he may receive an amount in excess of $92,000 from Defendant after Defendant "sent sufficient monies to the attorney for Plaintiff in Bankruptcy No. 05-35662 to pay his creditors in full, AND for Plaintiff to receive $9,494.76 back." Thus, we conclude that the record supports a finding that Plaintiff would obtain an unfair advantage in the event that we were to overturn the trial court's decision to the effect that Plaintiff was judicially estopped from proceeding against Defendant in this case.

As a result, for the reasons stated above, after applying the *Whitacre P'ship* factors to the facts of this case, we conclude that the trial court did not abuse its discretion in dismissing Plaintiff's claims on the basis of judicial estoppel. *See generally, Powell v. City of Newton,* —— N.C. App. ——, ——, 684 S.E.2d 55, 59 (2009) (stating that the "[p]laintiff's current position that he did not agree to surrender a quitclaim deed in exchange for $40,000.00 clearly is inconsistent with his position before the trial judge that "[T]hat's my agreement[,]" and therefore, "[p]ursuant to the doctrine of judicial estoppel, plaintiff ought not be permitted to now assert" an inconsistent position). It would be inequitable to allow Plaintiff to assert the right to recoup an amount in excess of $92,000 resulting from the death of William Bioletti in this case when he only disclosed that he was entitled to $24,797.14 in his filings in the Bankruptcy Court. As a result, since the trial court "acted within its discretion in applying judicial estoppel," since there are "no triable issues of material fact" in this case, and since "summary judgment [was] appropriate," *Whitacre P'ship,* 358

N.C. at 38, 591 S.E.2d at 895 (citation omitted), the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges STROUD and ROBERT N. HUNTER, JR. concur.