ESTATE OF LAUREN MEANS by KAREN MEANS, CO-ADMINISTRATRIX and MICHAEL MEANS, CO-ADMINISTRATOR, Plaintiffs v. SCOTT ELECTRIC CO. INC., Defendant

No. COA09-779

(Filed 2 November 2010)

**1. Pleadings— previous lawsuit—judgment on pleadings—collateral estoppel—res judicata**

The trial court did not err in a negligence suit by considering pleadings filed in a previous lawsuit concerning the same parties and subject matter in determining whether to grant defendant's Rule 12(c) motion on the basis of collateral or judicial estoppel. Moreover, even if the trial court had erred by considering the pleadings in the prior action, the proper remedy would have been to review the ruling under a Rule 56 summary judgment standard.

**2. Collateral Estoppel and Res Judicata— prior lawsuit—dismissed without prejudice—no final judgment on the merits**

The trial court erred in granting defendant's motion for judgment on the pleadings in a negligence action on the basis of collateral estoppel. The previous lawsuit concerning the same parties and subject matter was dismissed without prejudice and did not result in a final judgment on the merits.

**3. Estoppel— judicial estoppel—positions not factually inconsistent**

The trial court erred in granting defendant's motion for judgment on the pleadings in a negligence action on the basis of judi-

cial estoppel. Plaintiffs did not take positions in a previous lawsuit and the present lawsuit that were factually inconsistent so the doctrine of judicial estoppel did not apply.

Appeal by plaintiffs from order entered 10 November 2008 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 12 January 2010.

*Alan Toll and Associates, PLLC, by Alan E. Toll, Samuel B. Potter, and Kathryn Roebuck, and Chleborowicz & Theriault, LLP, by Christopher M. Theriault, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Colleen N. Shea and Norwood P. Blanchard, III, for defendant-appellee.*

STEELMAN, Judge.

The trial court did not err by considering pleadings filed in a previous lawsuit concerning the same parties and subject matter in determining whether to grant a Rule 12(c) motion on the basis of collateral or judicial estoppel. Where the earlier lawsuit did not result in a final judgment on the merits, collateral estoppel was inapplicable. Where plaintiffs did not assert factually inconsistent positions in the previous lawsuit, judicial estoppel was also inapplicable. The trial court committed reversible error by granting defendant's Rule 12(c) motion for judgment on the pleadings.

## I. Factual and Procedural Background

This action arises from an incident in 2006 that occurred in a newly built residential condominium owned by Coastal Estates, Inc. (Coastal Estates) located in Carolina Beach. Ocean Haven Phase 2 Unit Owners Association, Inc. (Ocean Haven) was the homeowners' association for the condominium. Otto Pridgen, III (Pridgen) was the president of Coastal Estates and was a managing member of Ocean Haven. In April 2006, Scott Electric Company, Inc. (Scott) was hired to install an "Inclinator" elevator in the condominium. Installation was completed in late June. The elevator was connected to electrical service, which allowed the elevator to be operated without restriction. The New Hanover County building inspector had issued a certificate of occupancy for the condominium, but had not inspected the elevator. As such, the elevator should not have been connected to electrical service.

ESTATE OF MEANS v. SCOTT ELEC. CO., INC.

[207 N.C. App. 713 (2010)]

On 23 July 2006, Lauren Means (Lauren), a ten-year-old minor child, attended a birthday party hosted by Pridgen at the condominium. At approximately 8:00 p.m., Lauren entered the elevator. The elevator subsequently got stuck between floors with Lauren trapped between the elevator cab and the shaft wall. Lauren suffered "traumatic and substantial crushing of her head, chest and shoulders which caused slow asphyxiation and eventual death due to crushing trauma, inability to breathe, and loss of blood and bodily fluids."

On 25 January 2007, Karen and Michael Means (plaintiffs), on behalf of the estate of Lauren, filed an amended complaint against Pridgen, Coastal Estates, M. Garrett, Inc.[1], Ocean Haven, and Scott and alleged claims for wrongful death; negligence, gross negligence, and willful and wanton negligence; negligent infliction of emotional distress; and piercing the corporate veil (25 January 2007 complaint). Plaintiffs' complaint alleged that Scott improperly installed the elevator in contravention of the manufacturer's specifications and standards, ANSI standards, industry standards, and National Electric Code standards and regulations. The complaint further alleged Pridgen had full knowledge of the North Carolina Building Code, all relevant health and safety regulations regarding residential construction, and all standards of construction, including those relating to residential elevators. After the elevator's installation, Pridgen modified the elevator by: (1) removing the safety gate and other safety devices; and (2) turning off or otherwise modifying two safety devices. These modifications were allegedly made in order for Pridgen to paint the elevator walls and allowed the elevator to operate without the safety devices in place. Plaintiffs alleged that Lauren's death was proximately caused by the improper elevator installation *and* the modification to its safety devices.

On 2 April 2007, Scott filed an answer denying the material allegations of plaintiffs' complaint and asserting that plaintiffs' claims against Scott were barred by the intervening and superseding negligence of the other defendants. On 28 August 2007, Scott filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil Procedure on the basis that "any negligence on the part of Scott is insulated and superseded by the negligence of Defendant Pridgen." The trial court allowed Scott's Rule 12(c) motion on 11 September

1. Plaintiff alleged that M. Garret, Inc. was formed by Pridgen for the sole purpose of "fraudulently and improperly siphoning assets and monies away from Pridgen and/or [Coastal] Estates," and was the instrumentality and alter ego of Pridgen and Coastal Estates.

2007, and plaintiffs' claims against Scott were dismissed without prejudice. The trial court did not include the basis of its ruling in the order. The trial court subsequently amended the order to allow plaintiff to re-file a complaint against Scott "within the time period prescribed by the statute of limitations and/or statute of repose."

On 12 October 2007, plaintiffs filed a second amended complaint against Pridgen, Coastal Estates, and Ocean Haven[2] (12 October 2007 complaint). Plaintiffs' claims against these defendants were subsequently settled.

On 21 July 2008, plaintiffs re-filed their complaint against Scott (21 July 2008 complaint). Plaintiffs alleged that Scott improperly installed the elevator in the elevator shaft. The elevator shaft was too wide for the elevator model that was installed, which created an excessive gap between the elevator cab and the shaft wall. Scott used non-Inclinator parts to bridge this gap. This was prohibited by Inclinator. After its installation, Scott failed to disconnect the electricity running to the elevator even though it had not passed inspection. Plaintiffs further alleged that Scott failed to utilize the lock out key, failed to supervise the elevator, failed to instruct Pridgen not to use the elevator until it passed inspection, and failed to warn Pridgen about the dangers of removing or altering any safety features.

On 22 September 2008, Scott filed an answer denying the material allegations of plaintiffs' complaint. Three days later, Scott filed a Rule 12(c) motion for judgment on the pleadings on the basis that plaintiffs' claims were barred by collateral and judicial estoppel. On 10 November 2008, the trial court granted Scott's motion and dismissed plaintiffs' claims with prejudice. The order did not specify the basis upon which the motion was granted.

Plaintiffs appeal.

## II. Matters Outside of the Complaint

[1] In their first argument, plaintiffs contend that the trial court erred by considering whether the doctrines of collateral or judicial estoppel were applicable upon a Rule 12(c) motion because the pleadings in the prior action were not attached to or the subject of plaintiffs' 21 July 2008 complaint against Scott. We disagree.

---

2. M. Garrett, Inc. was not a named party in the second amended complaint and the claim for piercing the corporate veil was also not included. A claim for premises liability was alleged against the remaining defendants.

Rule 12(c) of the Rules of Civil Procedure provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2007). The general rules about which documents can be considered on a Rule 12(c) motion are as follows: if documents are "attached to and incorporated within a complaint, they become part of the complaint. They may, therefore, be considered in connection with a Rule . . . 12(c) motion without converting it into a motion for summary judgment." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007). "A document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." *Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 545, 676 S.E.2d 481, 486 (2009) (quotation omitted).

However, this Court has held the following when estoppel was the basis for a Rule 12(c) motion:

> In determining what issues were actually litigated or determined by the earlier judgment, the court in the second proceeding is "free to go beyond the judgment roll, and may examine the pleadings and the evidence if any in the prior action." . . . The burden is on the party asserting issue preclusion to show "with clarity and certainty what was determined by the prior judgment."

*Burgess v. First Union Nat'l Bank of N.C.*, 150 N.C. App. 67, 75, 563 S.E.2d 14, 20 (2002) (quoting *Miller Building Corp. v. NBBJ North Carolina, Inc.*, 129 N.C. App. 97, 100, 497 S.E.2d 433, 435 (1998)) (alteration and emphasis omitted).

In the instant case, Scott raised both collateral and judicial estoppel as affirmative defenses in its answer. The 25 January 2007 complaint that was dismissed was attached as an exhibit to Scott's second answer. Scott filed the Rule 12(c) motion on the same basis. Plaintiffs responded with a memorandum of law in opposition to the motion and acknowledged the existence of the previous lawsuit. The trial court did not err in considering the pleadings in the prior action.

Even assuming *arguendo* the trial court erred by considering the pleadings in the prior action, the proper remedy would not be to reverse the ruling of the trial court, but rather to review its ruling under a Rule 56 summary judgment standard. *See Weaver*, 187 N.C. App. at 206, 652 S.E.2d at 708. This argument is without merit.

### III. Collateral Estoppel

[2] In their second argument, plaintiffs contend the trial court could not have properly granted Scott's motion for judgment on the pleadings on the basis of collateral estoppel because the 25 January 2007 complaint against Scott was dismissed without prejudice. We agree.

The doctrine of collateral estoppel is applicable where a defendant can establish "that the earlier suit *resulted in a final judgment on the merits,* that the issue in question was identical·to an issue actually litigated and necessary to the judgment, and that both [plaintiff and defendant] were either parties to the earlier suit or were in privity with parties." *Thomas M. McInnis & Assoc. v. Hall,* 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986) (citation omitted) (emphasis added). In the instant case, there was no "final judgment on the merits." Rule 41(b) provides that all dismissals, with certain exceptions, operate as an adjudication upon the merits unless the trial court specifies the dismissal is without prejudice. N.C. Gen. Stat. § 1A-1, Rule 41(b) (2007); *Whedon v. Whedon,* 313 N.C. 200, 210, 328 S.E.2d 437, 443 (1985) ("[T]he major exception to the general proposition that an involuntary dismissal operates as a final adjudication is found in the power lodged by Rule 41(b) in the trial judge to specifically order that the dismissal is without prejudice and, therefore, not an adjudication on the merits." (citation omitted)). Plaintiffs' 25 January 2007 complaint against Scott was dismissed without prejudice. The trial court subsequently entered an amended order that specifically allowed plaintiffs to re-file their complaint within the time period prescribed by the statute of limitations. The doctrine of collateral estoppel was not applicable.

### IV. Judicial Estoppel

[3] In their third argument, plaintiffs contend the trial court could not properly grant Scott's Rule 12(c) motion on the basis of judicial estoppel. We agree.

Our Supreme Court first recognized the doctrine of judicial estoppel in *Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 591 S.E.2d 870 (2004), and noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 28, 591 S.E.2d at 888 (quotation omitted). The purpose of this doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the

moment[.]" *Id.* (quotation omitted). "[J]udicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation." *Price v. Price,* 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005). In *Whitacre P'ship,* our Supreme Court set forth three factors which may be considered in determining whether the doctrine is applicable:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship,* 358 N.C. at 29, 591 S.E.2d at 888-89 (internal citations and quotations omitted). The first factor is the only factor that must be present for judicial estoppel to apply. *Wiley v. United Parcel Serv., Inc.,* 164 N.C. App. 183, 188, 594 S.E.2d 809, 812 (2004). Our Supreme Court emphasized that judicial estoppel is limited to the context of inconsistent *factual* assertions and should not be applied to prevent the assertion of inconsistent legal theories. *Whitacre P'ship,* 358 N.C. at 32, 591 S.E.2d at 890. North Carolina's liberal pleading rules permit a litigant to assert inconsistent, even contradictory, legal positions within a lawsuit. *Id.*; N.C. Gen. Stat. § 1A-1, Rule 8(e)(2) (2007). "[J]udicial estoppel is to be applied in the sound discretion of our trial courts." *Whiteacre P'ship,* 358 N.C. at 33, 591 S.E.2d at 891. Where the essential element of inconsistent positions is not present, it is an abuse of discretion to bar plaintiff's claim on the basis of judicial estoppel. *See Harvey v. McLaughlin,* 172 N.C. App. 582, 585, 616 S.E.2d 660, 663 (2005), *disc. review denied,* 360 N.C. 289, 628 S.E.2d 250 (2006).

The dispositive issue is whether plaintiffs' position, based upon the factual allegations in the instant case, was clearly inconsistent with their position as asserted in the earlier complaint. In order to make this determination, a detailed analysis of the factual allegations of the complaints is required.

Scott contends that the following constitute inconsistent positions by plaintiff. First, in the 25 January 2007 complaint, plaintiffs alleged that Pridgen had full knowledge of all relevant health and safety regulations regarding residential construction, including those relating to residential elevators based upon his experience as a licenced general contractor and was aware of the potential hazards created by the removal of the elevator's safety features. Plaintiffs further alleged that Pridgen negligently allowed use of the elevator without the safety devices. Scott argues that in the 21 July 2008 complaint that plaintiffs alleged that Pridgen was entirely unaware of those dangers because Scott did not review the owner's manual with him.

Scott misconstrues the allegations in plaintiffs' 21 July 2008 complaint. Plaintiffs alleged in the 2008 complaint that Inclinator, the manufacturer of the elevator, provided Scott, the installer of the elevator, an "Inclinator Company Safety Checklist" and an "Owner's Manual." The complaint alleged that Scott had a duty to go over the Safety Checklist and the safety provisions contained in the Owner's Manual before turning the elevator over to the owner for operation. Plaintiffs asserted that breach of this duty was negligence that proximately caused the death of Lauren.

The 2008 complaint was directed solely at Scott and not at Pridgen. The allegations in the 25 January 2007 amended complaint dealing with Pridgen's knowledge and experience in the construction industry in general are not inconsistent with the allegations in the 2008 complaint pertaining to specific duties owed by Scott to the owner of the premises under the Safety Checklist and Owner's Manual. These documents contained specific warnings and procedures to be followed when the elevator was used by children. The allegations were not factually inconsistent and could not serve as a basis for judicial estoppel in this case.

Scott's second asserted inconsistency deals with which party had "control" over the elevator at the time of the incident. In the second amended complaint filed in this action, plaintiffs alleged that "Coastal, Pridgen, and/or Ocean Haven had control over the Residence, Elevator, and Elevator Shaft on and prior to July 23, 2006." This allegation was made under plaintiffs' fourth claim for relief, premises liability. *See Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998) (holding that landowners and occupiers of land have a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors."). Plaintiffs alleged Coastal, Pridgen, and

Ocean Haven, as owners of the elevator, had a duty to all lawful visitors to maintain the elevator in a reasonably safe condition and to warn visitors of dangerous conditions or hidden perils. In plaintiffs' 2008 complaint against Scott, plaintiffs alleged that Scott was the responsible agent for the elevator such that it was in control of and possessed supervisory responsibility with regard to the elevator until it passed final inspection by New Hanover County. Plaintiffs further alleged that Scott failed to utilize the keylock out or otherwise secure the elevator, which allowed the elevator to be operated without restriction. These allegations are not inconsistent. As the owner of the premises, Coastal Estates, Pridgen, and Ocean Haven had a duty to visitors to the condominium. This duty does not exclude there being a duty on the part of Scott, under the applicable building code regulations, not to allow the elevator to be used until it had been inspected by the applicable authority and approved. The law in North Carolina clearly provides that there can be more than one proximate cause of an injury. *Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 172 (1984). Plaintiffs are entitled to plead alternative theories of liability against different defendants. N.C. Gen. Stat. § 1A-1, Rule 8(e)(2); *Whitacre P'ship*, 358 N.C. at 32, 591 S.E.2d at 890.

Scott's third alleged inconsistency relates to the proximate cause of Lauren's death. As stated above, "[i]t is well settled that there may be more than one proximate cause of an injury." *Adams*, 312 N.C. at 194, 322 S.E.2d at 172. Further, proximate cause must be established by the factual allegations in the complaint and is not a factual allegation itself. *See Pardue v. Speedway, Inc.*, 273 N.C. 314, 318, 159 S.E.2d 857, 859 (1968) ("In an action or defense based upon negligence, it is not sufficient to allege the mere happening of an event of an injurious nature and call it negligence on the part of the party sought to be charged. . . . [N]egligence is not a fact in itself, but is the legal result of certain facts. Therefore, the facts which constitute the negligence [alleged] and also the facts which establish such negligence as the proximate cause, or as one of the proximate causes, of the injury must be alleged." (quotation omitted)). Allegations of proximate cause are legal theories upon which plaintiffs may assert inconsistent, even contrary positions. This argument is without merit.

Because plaintiffs did not take positions that were *factually* inconsistent, the doctrine of judicial estoppel does not apply. Nothing in the record indicates that plaintiffs were playing " 'fast and loose' with the judicial system[,]" *Whitacre P'ship*, 358 N.C. at 26, 591 S.E.2d at 887, but were rather setting forth differing legal theories of liability

for Lauren's death against multiple defendants, which is permissible under Rule 8 of the Rules of Civil Procedure.

Neither the doctrine of collateral estoppel nor judicial estoppel are applicable in the instant case. The trial court erred by granting Scott's Rule 12(c) motion for judgment on the pleadings. The trial court's order is reversed. This case is remanded to the trial court for further proceedings.

REVERSED and REMANDED.

Judges JACKSON and HUNTER, JR. concur.