NO. COA 13-1149

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

IN THE MATTER OF THE                    Union County
PURPORTED WILL OF RUBY                  No. 10 E 230
SHAW SHEPHERD,
        Deceased.


Appeal by Caveator from Order entered 12 April 2013 by Judge W. David Lee in Union County Superior Court. Heard in the Court of Appeals 19 February 2014.

> *Wall Esleeck Babcock LLP, by Andrew L. Fitzgerald, and Hickmon & Perrin, PC, by James E. Hickmon, for Caveator.*
>
> *Helms, Robison & Lee P.A., by R. Kenneth Helms, Jr., and Aimee E. Brockington, for Propounder.*


STEPHENS, Judge.


*Factual Background and Procedural History*

This appeal arises from a caveat proceeding challenging the will of Ruby Shaw Shepherd ("Decedent"). Decedent died on 21 February 2010 in Fort Myers, Florida. At the time of her death, Decedent was a resident of Union County, North Carolina. Decedent is survived by her husband of nearly thirty years, Caveator James A. Shepherd, and four children from a previous marriage, including Propounder Angela Caroline Jeffers Bullock.

On 7 April 2010, Propounder filed in the Union County Superior Court clerk's office an application for probate and letters testamentary and a document entitled "Last Will and Testament of Ruby Shaw Shepherd," which purported to be the will of Decedent. The purported will made no mention of Caveator and named Propounder as the executrix of Decedent's estate. With the exception of several specific devises of tangible personal property, the purported will provided that Decedent's estate was to be divided equally among her four children. The clerk of superior court admitted the purported will to probate in the common form in the Estates Division of the Superior Court of Union County.[1]

Caveator filed a verified petition for an elective share on 18 June 2010, seeking a statutory spousal elective share from the estate of Decedent. In Caveator's petition for elective share, he stated that Decedent "died testate . . . and [that] her Last Will and Testament was probated on April 7, 2010."

---

[1] Although the application for probate and letters testamentary are included in the record, the certificate of probate and the letters testamentary are not. Thus, this Court has no information in the record to verify the date that the purported will was admitted to probate. We must assume from the progression of the probate of the purported will that a certificate of probate was issued.

Propounder filed the inventory for Decedent's estate and an addendum thereto on 14 September 2010. The inventory indicated that Decedent's estate contained total assets in the amount of $1,894,928.97.

Caveator filed a caveat to the purported will of Decedent on 29 October 2010. In his petition, Caveator alleged that, "[u]pon information and belief, [Decedent's purported will] . . . is not the Last Will and Testament of Ruby Shaw Shepherd" because Decedent either did not sign the purported will, or, if she did, she did so under "undue and improper influence and duress." Propounder filed an answer to the caveat on 19 November 2010. Subsequently, an order was entered *sua sponte* by the clerk of superior court on 3 December 2010 staying the hearing on Caveator's petition for an elective share until the resolution of the caveat action.[2] Propounder appealed from this order to the trial court.[3] The trial court entered an order on 21 January 2011 reversing the clerk's stay order and remanding the administration of the estate and the petition for elective share

---

[2] The clerk's 3 December 2010 order also stayed hearing on a petition for recovery of estate assets filed by Propounder. No copy of this petition is included in the record.

[3] Although both briefs indicate Propounder appealed the 3 December 2010 order, no copy of the notice of appeal is included in the record to indicate the date or grounds for said appeal.

to the clerk for further proceedings consistent with the trial court's reversal order. Following the trial court's reversal of the stay order, Caveator filed a motion to compel partial payment of the spousal elective share, to compel payment of expert fees, for issuance of an order to show cause, for revocation of Propounder's letters testamentary, and for attorneys' fees. In this motion, Caveator referred to the paper writing offered for probate as the "Decedent's purported will." Caveator also referred to the paper writing as the purported will in his memorandum in support of the motion for partial payment of the spousal elective share; however, Caveator calculated the spousal elective share based on the value of property passing according to the probate of Decedent's purported will.[4] Caveator's motion for partial payment of the spousal elective share was continued by the clerk of court until the parties engaged in mediation. Caveator's motion for

---

[4] Calculation of the elective share is defined in Article 1A of Chapter 30 of the North Carolina General Statutes. The share to which a surviving spouse is entitled is diminished by the property he or she is already receiving, either under the probate estate, by intestate succession, or by other means. Here, Caveator received nothing under the purported will. However, his share received by intestate succession would be approximately one-third of the estate. *See* N.C. Gen. Stat. § 29-14 (2013). Therefore, the calculation of the elective share would differ depending on which way Caveator was to receive property.

attorneys' fees was granted, and his remaining motions were denied.

On 19 December 2012, the clerk of court entered an "Order Determining Elective Share" whereby the spousal elective share was calculated to be $36,028.93 and Propounder, as Executrix of the Estate of Decedent, was ordered to pay the whole amount to Caveator. The clerk's order did not mention the caveat proceeding, and the clerk calculated the elective share based on the values of the probate estate, wherein no property passed to Caveator under the purported will.

Following the order for payment of the spousal elective share, Propounder filed a motion for summary judgment as to the caveat on 8 March 2013. In her summary judgment motion, Propounder argued that Caveator was estopped from pursuing the caveat because his position that the purported will was not valid was inconsistent with the position he maintained in the elective share action. Caveator filed a memorandum opposing Propounder's motion for summary judgment on 21 March 2013. The trial court entered an order on 12 April 2013 granting Propounder's motion. Caveator appeals.

*Discussion*

On appeal, Caveator argues that the trial court (1) erred in granting summary judgment in favor of Propounder on grounds that the doctrine of election of remedies bars Caveator from sustaining the caveat action, and (2) abused its discretion by holding that the doctrine of judicial estoppel also barred Caveator from sustaining the caveat action.[5] Caveator contends that the doctrine of election of remedies is not applicable in the case *sub judice* because payment of a spousal elective share and caveat of a will are not inconsistent remedies. Further, Caveator contends that the doctrine of judicial estoppel is not applicable in this case because Caveator did not make clearly inconsistent factual assertions. We agree and reverse the order of the trial court.

I.   *Election of Remedies*

Caveator argues that the trial court erred in granting summary judgment on the basis of the doctrine of election of remedies because a petition for payment of a spousal elective share is not inconsistent with the institution of a caveat action to contest a will. In contrast, Propounder argues that

---

[5] In support of her motion for summary judgment, Propounder argued that Caveator was estopped from pursuing the caveat according to the equitable doctrines of election of remedies and judicial estoppel. The trial court did not identify the grounds on which summary judgment was granted in favor of Propounder.

Caveator is estopped from pursuing the caveat action because it is predicated on an "opposite and irreconcilable" position from Caveator's position in the elective share proceeding. We conclude that the two remedies are not inconsistent and, therefore, that the doctrine of election of remedies is not applicable.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted; italics added).

"The purpose of the doctrine of election of remedies is to prevent more than one redress for a single wrong." *Triangle Park Chiropractic v. Battaglia*, 139 N.C. App. 201, 204, 532 S.E.2d 833, 835 (citation omitted), *disc. review denied*, 352 N.C. 683, 545 S.E.2d 728 (2000). "The whole doctrine of election is based on the theory that there are inconsistent rights or remedies of which a party may avail himself, and a choice of one is held to be an election not to pursue the other. The principle does not apply to coexisting and consistent remedies." *Pritchard v. Williams*, 175 N.C. 319, 323, 95 S.E. 570, 571 (1918) (internal

quotation marks omitted). "One is held to have made an election of remedies when he chooses with knowledge of the facts between two inconsistent remedial rights." *Lamb v. Lamb*, 92 N.C. App. 680, 685, 375 S.E.2d 685, 687 (1989) (citation omitted). "[A]n election of remedies presupposes a right to elect." *Competitor Liaison Bureau of NASCAR, Inc. v. Midkiff*, 246 N.C. 409, 414, 98 S.E.2d 468, 472 (1957) (citation and internal quotation marks omitted). "A party cannot . . . occupy inconsistent positions. . . . But the doctrine of election applies only where two or more existing *remedies* are alternative and inconsistent. If the remedies are not inconsistent, there is no ground for election." *Douglas v. Parks*, 68 N.C. App. 496, 498, 315 S.E.2d 84, 85 (citation omitted; emphasis added), *disc. review denied*, 311 N.C. 754, 321 S.E.2d 131 (1984). "It is the inconsistency of the demands which makes the election of one remedial right an estoppel against the assertion of the other . . . ." *Richardson v. Richardson*, 261 N.C. 521, 530, 135 S.E.2d 532, 539 (1964) (citation omitted).

> A plaintiff is deemed to have made an election of remedies, and therefore estopped from suing a second defendant, only if he has sought and obtained final judgment against a first defendant and the remedy granted in the first judgment is repugnant [to] or inconsistent with the remedy sought in the second action.

*Triangle Park Chiropractic*, 139 N.C. App. at 203-04, 532 S.E.2d at 835.

Here, the issue is whether the pursuit of an elective share based on the administration of a testate estate and a will caveat are alternative and inconsistent remedies. "In general, the purpose of a caveat is to determine whether the paper[ ]writing purporting to be a will is in fact the last will and testament of the person for whom it is propounded." *Baars v. Campbell Univ., Inc.*, 148 N.C. App. 408, 419, 558 S.E.2d 871, 878 (citation, internal quotation marks, and brackets omitted), *disc. review denied*, 355 N.C. 490, 563 S.E.2d 563 (2002). The right to claim an elective share is a statutory right created by section 30-3.1 which is given to "[t]he surviving spouse of a decedent who dies domiciled in [North Carolina]." N.C. Gen. Stat. § 30-3.1 (2013).[6] The elective share is calculated as a share of the decedent's "Total Net Assets" subtracted by the "Net Property Passing to Surviving Spouse," as both terms are defined by section 30-3.2. *See* N.C. Gen. Stat. § 30-3.1. Thus, the surviving spouse's elective share is reduced by the amount

---

[6] Section 30-3.1 was modified by 2013 N.C. Sess. Laws 91, § 1.(d), effective 1 October 2013. The modification is not applicable to the issues on appeal in this case.

of property he or she is already going to receive. The "Net Property Passing to Surviving Spouse" includes property "(i) devised, outright or in trust, by the decedent to the surviving spouse or (ii) that passes, outright or in trust, to the surviving spouse by intestacy." N.C. Gen. Stat. § 30-3.2(3c) (2013). By including both property devised to the surviving spouse and property passing by intestate succession in the calculation of the elective share, it is clear from the plain language of the statute that an elective share may be claimed by a surviving spouse whether the decedent dies testate or intestate. *See, e.g.*, *Bland v. Harold L. & Audree S. Mills Charitable Remainder Unitrust*, __ N.C. App. __, 754 S.E.2d 259 (2014) (unpublished opinion), *available at* 2014 WL 220557 (holding that quasi-estoppel was inapplicable to bar a challenge to the validity of a trust where distributions received by the wife were less than the elective share of her husband's intestate estate to which she would be entitled absent the trust); *In re Estate of Hendrick*, __ __ N.C. App. __, 753 S.E.2d 740 (2013) (unpublished opinion), *available at* 2013 WL 6237353 (holding that the wife was entitled to an elective share of the husband's testate estate where other beneficiaries failed to

establish grounds barring her entitlement).[7]  Section 30-3.4(b) also makes clear that a claim for an elective share is not dependent on whether the decedent dies testate because it requires that the claim be made within "six months after the issuance of letters . . . in connection with the will or intestate proceeding." N.C. Gen. Stat. § 30-3.4(b) (2013). Indeed, Propounder concedes in her brief that Caveator was entitled to pursue an elective share whether Decedent died testate or intestate. Because the caveat action is meant to determine whether a purported will is in fact the will of a decedent and the statutory right to claim an elective share does not depend on whether a decedent dies with a will, we conclude that the two remedies are not inconsistent.

In this case, however, Caveator made a specific assertion in his petition for elective share that Decedent "died testate" even though he was entitled to pursue an elective share whether Decedent died testate or not. On its face, this statement is inconsistent with Caveator's challenge to the will. Propounder argues that such inconsistency estops him from pursuing the

---

[7] These opinions are unpublished and, thus, have no precedential value. N.C.R. App. P. 30(e). Nonetheless, they provide helpful examples of recent cases in which this Court has acknowledged the entitlement of a surviving spouse to an elective share in both testate and intestate estate administrations.

caveat action as an impermissible election of remedies. We disagree.

Propounder's argument is misplaced as applied to the doctrine of election of remedies. As discussed above, the elective share proceeding is not an inconsistent and alternative remedy to the caveat action. Even if the elective share proceeding were inconsistent with the caveat action, however, Caveator's assertion that Decedent died testate is irrelevant to the clerk's calculation of the elective share.

"[P]robate is conclusive evidence of the validity of the will, until it is vacated on appeal or declared void by a competent tribunal."[8] N.C. Gen. Stat. § 28A-2A-12 (2013). When the clerk of superior court takes proof of a script and admits it to probate in common form, it is an *ex parte* proceeding, and the script "stands as the testator's will, and his only will, until challenged and reversed" by caveat. *In re Will of Charles*, 263 N.C. 411, 415, 139 S.E.2d 588, 591 (1965); *see also Walters v. Baptist Children's Home of N.C., Inc.*, 251 N.C. 369, 377, 111 S.E.2d 707, 714 (1959) ("[T]he probate of a will by the [c]lerk of [s]uperior [c]ourt is . . . conclusive evidence of the

---

[8] This statute was codified as N.C. Gen. Stat. § 31-19 in 2010, when Decedent died. It was re-codified as N.C. Gen. Stat. § 28A-2A-12, effective 1 January 2012, by 2011 N.C. Sess. Laws 344.

validity of the will[] until vacated on appeal[] or declared void by a competent tribunal in a proceeding instituted for that purpose.").

Consistent with our statutes and established case law, the trial court's 21 January 2011 order, which reversed the stay of the elective share proceeding until the resolution of the caveat action, concluded that probate "of the [w]ill is conclusive unless and until it is vacated on appeal or declared void by a competent tribunal in a caveat proceeding." In addition, the trial court concluded, *inter alia*, that (1) the will had not been set aside by the caveat because no determination had been reached in that proceeding, (2) the filing of the caveat did not stay the administration of the estate or the elective share proceeding, and (3) the elective share proceeding should be remanded to the clerk to proceed accordingly. As a result, the clerk was obligated on remand to calculate the elective share in accordance with the probate of Decedent's purported will, regardless of Caveator's assertion in his petition. Consequently, Caveator had no "right to elect" between calculation of the elective share on the basis of a testate or intestate estate administration. *See, e.g.*, *Competitor Liaison Bureau of NASCAR, Inc.*, 246 N.C. at 414, 98 S.E.2d at 472.

Though Caveator chose to pursue an elective share, that remedy, alone, is not inconsistent with a caveat. Moreover, the doctrine of election of remedies cannot be applied to bar the award of the elective share to Caveator based solely on the clerk's administration of Decedent's estate as a testate estate. Indeed, to the extent Caveator could have alleged an inconsistent remedy in his petition for an elective share, that element of his petition cannot work to bar his caveat proceeding when the clerk had no choice but to calculate the elective share based on a testate estate administration. Accordingly, we hold that the doctrine of election of remedies does not work to bar Caveator's challenge to the will.

## II.  *Judicial Estoppel*

Caveator also argues that the trial court abused its discretion by applying judicial estoppel as a bar to the caveat action after the trial court ordered payment of the elective share. In opposition, Propounder contends that judicial estoppel was properly applied because Caveator asserted inconsistent factual positions by alleging both the validity and the invalidity of Decedent's will. We disagree.

"[J]udicial estoppel is to be applied in the sound discretion of our trial courts." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 33, 591 S.E.2d 870, 891 (2004). "[A] trial court's application of judicial estoppel is reviewed for abuse of discretion." *Id.* at 38, 591 S.E.2d at 894 (citations omitted). "[W]hen a trial court has acted within its discretion in applying judicial estoppel, leaving no triable issues of material fact, summary judgment is appropriate." *Id.* at 39, 591 S.E.2d at 895 (citations omitted). "If the trial court did not abuse its discretion in determining that [judicial estoppel is applicable], there are no triable issues of fact . . . as a matter of law, rendering summary judgment appropriate." *Bioletti v. Bioletti*, 204 N.C. App. 270, 274, 693 S.E.2d 691, 694-95 (2010). "Where the essential element of inconsistent positions is not present, it is an abuse of discretion to bar [the] plaintiff's claim on the basis of judicial estoppel." *Estate of Means v. Scott Elec. Co.*, 207 N.C. App. 713, 719, 701 S.E.2d 294, 299 (2010) (citation omitted).

"[T]he purpose of the [judicial estoppel] doctrine [i]s to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Whitacre P'ship*, 358 N.C. at 28, 591

S.E.2d at 888 (citations and internal quotation marks omitted). "[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *T-Wol Acquisition Co. v. ECDG South, LLC*, ___ N.C. App. ___, ___, 725 S.E.2d 605, 612 (2012) (citation and internal quotation marks omitted). Nevertheless,

> our Supreme Court [has] set forth three factors which may be considered in determining whether the doctrine is applicable: First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at ___, 725 S.E.2d at 612-13 (citation omitted). "[T]hese three factors do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel and . . . additional considerations may inform the doctrine's application in specific factual contexts." *Whitacre*

*P'ship*, 358 N.C. at 29, 591 S.E.2d at 889 (citation and internal quotation marks omitted). "The first factor, and the only factor that is an essential element which must be present for judicial estoppel to apply[,] is that a party's subsequent position must be clearly inconsistent with its earlier position." *Wiley v. United Parcel Serv., Inc.*, 164 N.C. App. 183, 188, 594 S.E.2d 809, 812 (2004) (citation and internal quotation marks omitted). "[J]udicial estoppel is limited to the context of inconsistent factual assertions and . . . the doctrine should not be applied to prevent the assertion of inconsistent legal theories." *Whitacre P'ship*, 358 N.C. at 32, 591 S.E.2d at 890. When the record and pleadings are examined as a whole, minor discrepancies in a position consistently maintained do not amount to "clearly inconsistent" positions. *Harvey v. McLaughlin*, 172 N.C. App. 582, 585, 616 S.E.2d 660, 663 (2005) (holding that discrepancies in allegations in the plaintiff's complaint regarding the date of the onset of injury were not clearly inconsistent positions where the plaintiff maintained one position as a whole), *disc. review denied*, 360 N.C. 289, 628 S.E.2d 250 (2006); *see also Estate of Means*, 207 N.C. App. at 720, 701 S.E.2d at 299 (holding that differences in allegations of knowledge of the two defendants in a negligence action which

were "in general . . . not inconsistent," and meant to show separate duties owed by each defendant, were not factually inconsistent positions).

Here, Caveator stated in his petition for an elective share that Decedent "died testate" and that "her Last Will and Testament was probated on April 7, 2010." Four months later, however, Caveator stated in his caveat that Decedent "did not . . . sign and execute said paper writing as her Last Will and Testament" and that, if she did, it was due to "undue and improper influence and duress." Propounder argues that these statements represent clearly inconsistent factual assertions. We disagree.

No will is valid unless it complies with the relevant statutory requirements. N.C. Gen. Stat. § 31-3.1. "[T]he [c]lerk of the [s]uperior [c]ourt has the sole power in the first instance to determine whether a decedent died testate or intestate, and if he died testate, whether the script in dispute is his will." *Walters*, 251 N.C. at 376, 111 S.E.2d at 713 (citation and internal quotation marks omitted). "[T]he probate of a will by the [c]lerk of [s]uperior [c]ourt is a judicial act, and his certificate is conclusive evidence of the validity of the will, until vacated on appeal, or declared void by a

competent tribunal in a proceeding instituted for that purpose." *Id.* at 377, 111 S.E.2d at 714; *see also* N.C. Gen. Stat. § 28A-2A-12; *In re Will of Spinks*, 7 N.C. App. 417, 173 S.E.2d 1 (1970) (upholding the clerk's denial of a motion by a group of surviving family members to set aside probate of a holographic will because there was no inherent or fatal defect appearing on the face of the will and no caveat action was filed). "And until so set aside it is presumed to be the will of the testator." *Walters*, 251 N.C. at 377, 111 S.E.2d at 714. In addition, "the proper execution of [a] will [is] a mixed question of law and fact." *Burney v. Allen*, 127 N.C. 476, 478, 37 S.E. 501, 502 (1900); *see also In re Will of Mucci*, 287 N.C. 26, 213 S.E.2d 207 (1975) (holding that directed verdict as to whether a will may be probated is the best procedure when no evidence of testamentary intent is presented); *In re Will of Deyton*, 177 N.C. 494, 507, 99 S.E. 424, 430 (1919) ("But the facts must be found by the jury, in order that we may pass upon the validity of the paper[ ]writings as the will of the deceased."); *In re Will of Mason*, 168 N.C. App. 160, 606 S.E.2d 921 (holding that directed verdict is appropriate as to the validity of a will when there are no evidentiary issues to be resolved), *disc. review denied*, 359 N.C. 411, 613 S.E.2d 26 (2005).

Here, Decedent's purported will was admitted to probate by the clerk of superior court before Caveator filed the petition for an elective share.[9] By admitting the purported will to probate, the clerk made the determination that Decedent died testate and that the purported will was the last will and testament of Decedent. *See, e.g.*, *Walters*, 251 N.C. at 377, 111 S.E.2d at 714. Caveator's statement in his petition for an elective share is consistent with the determination made by the clerk and the legal presumption that the purported will is the valid will of Decedent until set aside by a caveat action. *See id.* Further, as the validity of a will is a mixed issue of law and fact, Caveator's statements that Decedent "died testate" and that "her Last Will" was probated are not factual assertions as to the will's validity, and, therefore, judicial estoppel is not applicable in this case.

*III. Receipt of a Benefit*

Caveator also argues that estoppel does not otherwise apply to bar him from pursuing the caveat when he accepted property to which he was already entitled. Propounder responds that estoppel does, in fact, apply because Caveator actually received a

---

[9] According to the petition for an elective share, the purported will was admitted to probate on 7 April 2010.

"benefit under the will," which bars him from thereafter seeking to invalidate it. This response is incorrect.

Although Propounder and Caveator make these arguments in the context of the doctrine of election of remedies, the cases cited are more representative of the principle of quasi-estoppel. In defining quasi-estoppel, or "estoppel by benefit," the North Carolina Supreme Court has stated that, "[u]nder a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." *Whitacre P'ship*, 358 N.C. at 18, 591 S.E.2d at 881-82 (citations and internal quotation marks omitted). "[T]he essential purpose of quasi-estoppel is to prevent a party from benefitting by taking two clearly inconsistent positions." *Id.* at 18-19, 591 S.E.2d at 882 (citation, internal quotation marks, and ellipsis omitted). In the context of a will, a party that has "judicially asserted rights consistent with the validity of the will . . . is estopped, in a subsequent proceeding, from asserting the inconsistent position of disputing the will's validity." *In re Will of Lamanski*, 149 N.C. App. 647, 650, 561 S.E.2d 537, 540 (2002) (citation omitted) [hereinafter *Will of Lamanski*]. The

cases cited by Caveator further address the doctrine of quasi-estoppel in the specific context of a will caveat and its exceptions.

In *In re the Will of Peacock*, a decedent's son instituted a caveat proceeding after receiving a check under the decedent's will. 18 N.C. App. 554, 555, 197 S.E.2d 254, 255 (1973) [hereinafter *Will of Peacock*]. In analyzing whether the decedent's son could be estopped from pursuing the caveat on grounds that he had already taken under the will, this Court observed that the share of the estate to which the decedent's son would be entitled would be greater than the amount of the check he had already received if his caveat proceeding were successful. *Id.* at 556, 197 S.E.2d at 255. Specifically, the Court held that

> [the son's] acceptance of a check for less than [the amount of his share of the intestate estate] could in no way prejudice his sisters in [the] event [the] probate of the will is subsequently set aside. Nothing in the circumstances indicates any reason why it would be inequitable for [the son] to proceed with his caveat.

*Id.*

Similarly, in *In re Will of Smith*, this Court held that the decedent's daughter was not estopped from pursuing a caveat even though she received a car under the will. 158 N.C. App. 722,

724-25, 582 S.E.2d 356, 358 (2003) [hereinafter *Will of Smith*]. The Court observed that the daughter was entitled to the car under the will admitted to probate, a prior will, or via intestate succession. *Id.* Quoting *Will of Peacock*, the Court further reasoned that, because the daughter's caveat would not change the disposition of the car, it was not inequitable for her to receive the car and pursue the caveat. *Id.*

*Will of Lamanski* arose in a slightly different factual situation from *Will of Smith* and *Will of Peacock.* In *Will of Lamanski*, the decedent's will gave her sister the choice of certain items of tangible personal property in the decedent's home. 149 N.C. App. at 647, 561 S.E.2d at 538. Under that provision, the decedent's sister chose specific pieces of property, some of which were delivered to her pursuant to the bequest. *Id.* at 648, 561 S.E.2d at 539. When the executrix of the decedent's will failed to deliver the other items, however, the decedent's sister filed a caveat despite retaining the items of tangible personal property that had been delivered to her under the will. *Id.* The sister argued that retention of the tangible personal property should not work to estop her from pursuing the caveat because, if the will were set aside, she would be entitled to one-third of the estate, which was more

than the value of the property she retained. *Id.* at 651, 561 S.E.2d at 540. Acknowledging the rule set forth in *Will of Peacock* and applied in *Will of Smith*, *i.e.*, that "one cannot be estopped by accepting that which he would be legally entitled to receive in any event," we distinguished the facts in *Will of Lamanski*. *Id.* at 651, 561 S.E.2d at 540-41. Specifically, we pointed out that the beneficiary in *Will of Peacock* received cash in an amount less than he would have received if the will were set aside. *Id.* In *Will of Lamanski*, however, the decedent's sister had been given a right to choose from among items of tangible personal property in the decedent's home. *Id.* Otherwise, the sister "would have had no legal right, outside the will, to the specific personal property which she received and retained pursuant to the specific bequest." *Id.* Thus, the distinguishing factor in *Will of Lamanski* was the sister's choice of specific property which she would not necessarily receive if the will were set aside. *Id.*

In this case, unlike *Will of Lamanski*, Caveator did not receive a specific bequest. Rather, he asserted his right to an elective share, consistent with the validity of the will. The amount of the elective share awarded to Caveator was a cash amount that was a direct result of the probate of Decedent's

will. Modeling our analysis after *Will of Peacock*, *Will of Smith*, and *Will of Lamanski*, we conclude that, if the will were set aside, Caveator would be entitled to receive a cash amount greater than he has already received. He has not exercised a right under the will to any specific property he would not otherwise be entitled to receive. Thus, Caveator cannot be estopped from pursuing the caveat action based on his receipt of the elective share because he would be entitled to that amount of cash in any event. Propounder's argument is overruled.

*Conclusion*

Propounder argues that the trial court's order, granting summary judgment, was appropriate pursuant to the equitable doctrines of election of remedies and judicial estoppel. We conclude, as discussed above, that neither doctrine is applicable here. Therefore, we hold that the trial court erred in granting summary judgment in favor of Propounder. We thus reverse that decision.

REVERSED.

Judges BRYANT and DILLON concur.