IN THE SUPREME COURT OF NORTH CAROLINA

No. 155A16

17 March 2017

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY and UNITED BANK & TRUST COMPANY, VERSAILLES, KY., f/k/a FARMERS BANK & TRUST COMPANY (GEORGETOWN, KY.)

v.

HARTFORD FIRE INSURANCE COMPANY, SHRIJEE LLC, HELM BUILDERS, LLC, and MICHAEL D. ANDREWS, in his official capacity as Sheriff of Durham County, North Carolina

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 785 S.E.2d 185 (2016), affirming an order on summary judgment entered on 30 September 2014 by Judge Henry W. Hight, Jr., and reversing and remanding an order granting judgment on the pleadings entered on 14 August 2014 by Judge G. Wayne Abernathy, both in Superior Court, Durham County. Heard in the Supreme Court on 14 February 2017.

> *Manning Fulton & Skinner, P.A., by Judson A. Welborn, J. Whitfield Gibson, and Natalie M. Rice, for plaintiff-appellant United Bank & Trust Company.*

> *Lewis & Roberts, PLLC, by James A. Roberts, III and Jessica E. Bowers, for defendant-appellee Hartford Fire Insurance Company.*

NEWBY, Justice.

The doctrine of judicial estoppel preserves the integrity of judicial proceedings by preventing a party from taking inconsistent positions before the court, thus safeguarding the rule of law and securing public confidence in the court system. Here the trial court found that, in a prior related case, defense counsel assured a federal

court that defendant Hartford Fire Insurance Company (defendant or Hartford) would not collaterally attack the federal judgment post hoc by relitigating its related claims arising from the same facts. Defendant declined to join that federal litigation, but nonetheless raises substantially similar tort claims here. As such, the trial court found that defendant essentially takes the action which defense counsel stated it would not take, thereby adopting an inconsistent position. Affording the appropriate deference to the trial court, we conclude that the trial court did not abuse its discretion by invoking the doctrine of judicial estoppel to bar defendant from proceeding with its tort counterclaims. Accordingly, we reverse the decision of the Court of Appeals.

This case arises from a bonding dispute, which stems from a failed hotel development project. Four suits involving various parties, including the property owner, general contractor, lender, and bonding company, ensued, the last of which is before this Court. The third suit arose in federal court, which Hartford, the bonding company, declined to join, and during which the bonding company's counsel made declarations to the federal court, which may reasonably be interpreted as contravening the bonding company's actions sub judice.

On 14 November 2007, Shrijee LLC (owner and developer) contracted with Helm Builders, LLC (general contractor) for the construction of a Durham hotel project, known as Hotel Indigo. Under the contract Helm agreed to furnish labor and

materials for a total cost of $13,050,000, and Helm was required to obtain a payment and performance bond.

On 20 December 2007, United Bank & Trust Company (lender) issued a construction loan to Shrijee in the amount of $13,600,000 for use on the project,[1] and Shrijee executed a "deed of trust, assignment and security agreement" on the underlying hotel real property for the benefit of the Bank, which was recorded on 21 December 2007 with the Durham County Register of Deeds. At Helm's request, on 22 February 2008, United Bank sent a letter (the 2008 Letter) to Helm "confirm[ing] that the financing is available for the Hotel Indigo," that "[t]he minimum of $13,050,000 has been allocated for the contract amount to Helm Builders, LLC for the construction of the project," and that "payment authorizations will be determined and conducted by a third-party architect." The Bank further stated: "We understand this letter is to be used to release the Payment and Performance bonds for the construction of this project."

On 8 July 2008, Hartford issued a labor and material payment bond and a performance bond "to guarantee HELM's faithful performance of HELM's obligations under the Contract." Helm had executed various general indemnity agreements beforehand, dating back to 15 August 2005, which assigned to Hartford all of its

---

[1] Farmers Bank & Trust was the original issuer of the loan and merged with United Bank in November 2008. For purposes of this opinion, actions by Farmers Bank before the merger are referred to as those of United Bank, its undisputed successor in interest.

rights under the construction contract, including tort claims, and which also gave Hartford the discretion to "assert and pursue all of the assigned . . . rights, actions, causes of action, claims, and/or demands."

Over the next two years, Helm substantially completed the Hotel Indigo project, which received a conditional certificate of occupancy in August of 2009, but Shrijee withheld payment for certain work. Hartford subsequently made payments under the bonds to various subcontractors whom Helm had failed to pay. On 28 January 2010, Helm sued Shrijee in Superior Court, Durham County (*Helm I*), and ultimately obtained a judgment for the unpaid work in the amount of $1,074,163.20, plus interest of $352,796.40 and $278,287.05 in attorneys' fees, on 20 October 2011 (the Shrijee Judgment).

During the pendency of the *Helm I* suit, on 31 January 2011, Helm sued United Bank in the United States District Court for the Middle District of North Carolina (the federal action), alleging that the 2008 Letter, which "confirmed in writing . . . that financing was being made available," contained fraudulent "misrepresentations made by the Bank," namely, that the monies were not actually allocated to pay Helm. Helm asserted claims of, *inter alia*, fraud, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices, all of which relied upon the alleged misrepresentations in the 2008 Letter.

On 14 November 2012, counsel for Hartford contacted United Bank to "reaffirm" that "Hartford was the lawful owner of the Shrijee Judgment" under its previous general indemnity agreements. On 20 November 2012, Helm re-memorialized the agreement by executing an "Assignment of Judgment," filed with the Durham County Clerk of Superior Court, which stated that "HELM Builders, LLC does hereby further assign, transfer and grant to Hartford all of its rights to sue . . . and all other legal processes necessary to the enforcement of the [Shrijee] Judgment and all proceeds recovered," and that "the [previous indemnity agreements] shall remain in full force and effect."

Nonetheless, on 4 June 2013, Helm filed a complaint in Superior Court, New Hanover County, against Hartford (*Helm II*) seeking, *inter alia*, a declaratory judgment that Helm's "Assignment is null and void," that Hartford "has no rights or interest in the [federal action]," and that "Helm's claims asserted in the [federal action] are not subject to the assignment provisions of the Hartford Indemnity Agreements."

In light of Helm's apparent assignment to Hartford of the Shrijee Judgment and tort claims, United Bank became "concern[ed] over the possibility of inconsistent verdicts should United Bank be forced to litigate the same issues against Helm and Hartford in separate actions." Furthermore, faced with "Hartford's alleged ownership of all claims arising from or related to the [Hotel Indigo] Project," the Bank became concerned about not only the claims arising in Helm's name, but those arising

in the name of Hartford. Ultimately, on 7 June 2013, the Bank moved the federal court to substitute Hartford as the plaintiff or, in the alternative, to join Hartford as a necessary party, noting that "it is undisputed that Hartford claims an interest in the subject of this [federal] action," and thus any related claims arising therefrom.

On 21 June 2013, in the action sub judice United Bank filed its complaint in Superior Court, Durham County, against Hartford seeking, *inter alia*, a declaratory judgment that the Bank's deed of trust securing the construction loan has priority over Helm's lien against Shrijee for "labor performed or materials furnished."[2]

On 3 July 2013, counsel for Helm, United Bank, and Hartford appeared before the federal court regarding the Bank's motion to include Hartford as a plaintiff or necessary party in the federal action. Noting the recently filed state court litigation, the *Helm II* suit and the suit sub judice, the court inquired about the "purported dispute between the plaintiff here [Helm] and Hartford with regard to what rights Hartford may or may not have in this litigation." The court expressed concerned about

> who would be the real party in interest in this case, who
> owns this action, and whether or not if Helm pursues this
> case, Hartford would have some right to come along at a
> later time and say we're not bound by that, we own this,
> and we think Helm should have pursued a different course,
> we don't think they waived anything that would effect [sic]
> us. That bothers me. So my question to you is, are Helm
> and Hartford on the same page with regard to our

---

[2] Old Republic National Title Insurance Company, as the title insurer for the deed of trust, is a co-plaintiff.

proceeding ahead with this lawsuit?

Counsel for Hartford responded: "Hartford has no objection with this case moving forward without Hartford . . . , and that Hartford does not—will not seek to collaterally attack any judgment entered in this action with Hartford not as a named party." Counsel acknowledged concerns regarding the possible estoppel of its claims in the related actions, stating to the court: "To the extent there are—there is evidence brought to the Court's attention in this case, it would be Hartford's position that there would be no issue preclusion as to Hartford in that related litigation."

The court responded: "I don't know that I can make any ruling with regard to issue preclusion that would be applied by the state court, . . . [and] anything I say or do would be only advisory with regard to what the state court may find to be precluded." In other words, if Hartford declined to join the federal action, it would assume the risk that its claims may be estopped in the related state court litigation.

Counsel for Hartford acquiesced, stating:

> [I]t is clear from Hartford's perspective that it is not a
> necessary party to this litigation. To the extent Your
> Honor does have concerns as to any purported assignments
> of the general agreements indemnity as they are brought
> to the Court's attention, or issues of equitable subrogation,
> I think that that could be essentially be handled post-
> litigation through interpleader action.

The court agreed. Hartford ultimately declined to join the federal action.

After extensive discovery and deposition testimony, Helm's claims arising from the 2008 Letter were tried before a jury in the federal action. As described by United Bank, "Counsel for Hartford sat through the majority of the trial and never advised the court of any reason to add Hartford to the case." On the verdict sheet the jury expressly concluded that the February 2008 Letter did not contain "false information" and that Helm did not suffer harm therefrom. Following adjudication of Helm's claims, on 16 July 2013, the federal court ordered that Helm "have and recover nothing from [United Bank]" and dismissed the case with prejudice.

On 17 October 2013, Hartford answered United Bank's complaint sub judice and filed, *inter alia*, tort counterclaims based on the alleged falsity of the 2008 Letter, which are the only claims at issue before this Court.[3] Based on that alleged falsity, Hartford raises strikingly similar tort counterclaims as those raised by Helm in the federal action, consisting of fraud, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices. Hartford alleges that United Bank acted fraudulently by "ma[king] false and misleading representations" in the 2008 Letter and that "Hartford would not have issued both the Payment and Performance Bonds absent the Bank's express representations" therein. In response, United Bank points to the related federal action and raises affirmative defenses of "res judicata and/or collateral estoppel" because the same tort claims "were litigated

---

[3] On 13 October 2014, the trial court entered a consent judgment, which the parties concede resolved all other remaining claims.

to final judgment" by Hartford's assignor Helm. The Bank asserted other defenses as well, including waiver, unclean hands, and "judicial estoppel/estoppel by inconsistent positions" based on Hartford's counsel's declarations to the federal court.

On 25 February 2014, United Bank successfully moved for judgment on the pleadings as to the tort counterclaims. *See* N.C.G.S. § 1A-1, Rule 12(c) (2016). The trial court found that "Hartford is in privity with Helm" due to Helm's prior assignment. Given "Hartford's counsel's representations to [the federal court]" and "Hartford's decision not to participate in the [federal action]," which would have afforded Hartford "a full and fair opportunity to litigate its claims," the trial court found that "Hartford is bound by the judgment entered in the [federal action]." Citing *Whitacre Partnership v. BioSignia, Inc.*, 358 N.C. 1, 591 S.E.2d 870 (2004), the trial court concluded that "Hartford is judicially estopped from asserting the counterclaims against United Bank." In addition to finding judicial estoppel, the trial court found that Hartford's counterclaims were also barred by the doctrines of collateral estoppel and res judicata because the "central issue to the Counterclaims all revolves around the truth or falsity of the statements in the February 2008 Letter," which statements the federal jury had already determined "to be true." Hartford appealed to the Court of Appeals.

In a divided opinion, the Court of Appeals reversed the dismissal of Hartford's tort counterclaims. *Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, ___ N.C. App. ___, 785 S.E.2d 185, 2016 WL 1321139 (2016) (unpublished). The majority

concluded that, though "Hartford was in privity with respect to [Helm's] claims in the federal action," *Old Republic*, 2016 WL 1321139, at *4, such participation "only bars any claim Hartford might otherwise have (as assignee of [Helm's] claims) to recover for [*Helm's*] damages based on [Helm's] reasonable reliance on representations made by United Bank," *id.* The dissent opined that Hartford had "numerous opportunities" to join the federal action and that the doctrines of res judicata and collateral estoppel bar its tort counterclaims. *Id.* at *12 (Hunter, Jr., J., dissenting). Neither the majority nor the dissent, however, addressed the trial court's implementation of judicial estoppel, despite arguments made by the parties. United Bank appeals as a matter of right.

North Carolina has long recognized the importance of candor with the trial court. *See Whitacre P'ship*, 358 N.C. at 12, 591 S.E.2d at 878 (citing *Kannan v. Assad*, 182 N.C. 77, 78, 108 S.E. 383, 384 (1921)). The doctrine of "judicial estoppel seeks to protect the integrity of the judicial process," *id.* at 16, 591 S.E.2d at 880, "which 'lies at the foundation of all fair dealing . . . and without which, it would be impossible to administer law as a system,'" *id.* at 27, 591 S.E.2d at 887 (quoting *Armfield v. Moore*, 44 N.C. (Busb.) 157, 161 (1852)).

A party is generally not "allowed to change his position with respect to a material matter, during the course of litigation, nor should he be allowed to 'blow hot and cold in the same breath.'" *Id.* at 12, 591 S.E.2d at 878 (quoting *Kannan*, 182 N.C. at 78, 108 S.E. at 384); *see id.* at 29, 591 S.E.2d at 888 (Judicial estoppel is proper

when "a party's subsequent position . . . [is] ' "clearly inconsistent" with its earlier position.' " (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed 2d 968, 978 (2001))). Unlike its "closely related" cousins, the doctrines of collateral estoppel and res judicata, judicial estoppel is "dissimilar in critical respects." *Id.* at 16, 591 S.E.2d at 880 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). Judicial estoppel seeks to protect the judicial process itself and does not require " 'mutuality' of the parties," detrimental reliance, or that an issue have been "actually litigated in a prior proceeding." *Id.* at 16-18, 591 S.E.2d at 880-82 (citations omitted).

As a "discretionary equitable doctrine," *id.* at 26, 591 S.E.2d at 887, judicial estoppel empowers the court with the necessary "means to protect the integrity of judicial proceedings where [other] doctrines . . . might not adequately serve that role," *id.* at 26, 591 S.E.2d at 887 (citations omitted). Because judicial estoppel "protect[s] the courts rather than the litigants, . . . a court, even an appellate court, may raise [judicial] estoppel on its own motion." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.) (footnote omitted) (citing *Allen*, 667 F.2d at 1168 n.5)), *cert. denied*, 498 U.S. 812, 111 S. Ct. 48, 112 L. Ed. 2d 24 (1990).

We review de novo the trial court's order granting judgment on the pleadings. *See CommScope Credit Union v. Butler & Burke, LLP*, ___ N.C. ___, ___, 790 S.E.2d 657, 659 (2016). The trial court's implementation of judicial estoppel as a basis to grant the order, however, is reviewed for abuse of discretion, *Whitacre P'ship*, 358

-11-

N.C. at 38, 591 S.E.2d at 894 (citing *New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1814-15, 149 L. Ed 2d at 977-78), and will only be overturned "upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision," *In re Foreclosure of Lucks*, ___ N.C. ___, ___, 794 S.E.2d 501, 506 (2016) (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).

Though the parties have primarily focused their briefing on the companion doctrines of collateral estoppel and res judicata, we proceed no further than judicial estoppel. Hartford argues that it is not prosecuting its "Assigned Claims" from Helm but rather "its own, independent Tort Claims." Such a factual inquiry, however, reaches beyond the appropriate standard of review for judicial estoppel. Presented with Hartford's counsel's apparently contradictory declarations before the federal court and the substantial similarities of its tort claims to those of Helm, as revealed in the pleadings, the trial court reasonably invoked judicial estoppel to prevent Hartford from taking an inconsistent position, and therefore, did not abuse its discretion.

By filing its similar tort counterclaims, the trial court could reasonably conclude that Hartford takes the action that it stated to the federal court it would not take. *See Whitacre P'ship*, 358 N.C. at 29, 591 S.E.2d at 888. The federal court expressed concerns that Hartford might "come along at a later time and say we're not bound by [the federal action]" and further advised Hartford that it could not rule regarding its state-court estoppel concerns. Despite knowing of the estoppel risk,

Hartford declined to join the federal action and stated that it "will not seek to collaterally attack any judgment entered in this action with Hartford not as a named party." *See Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39, 47-48 (1857) ("The law . . . will not . . . suffer a man to contradict or gainsay, what, under particular circumstances, he may have previously said or done."); *see also Collateral Attack*, *Black's Law Dictionary* (10th ed. 2014) ("[A]n attempt to undermine a judgment through a judicial proceeding in which the ground . . . is that the judgment is ineffective."). Nonetheless, Hartford seeks to raise similar fraud claims to those of its assignor Helm, all of which contest the same adjudicated facts in the federal action—the very situation about which the federal court expressed concern. Moreover, United Bank moved to join Hartford as a necessary party in that action, seeking to avoid such relitigation.

Allowing Hartford to proceed in the face of its own contravening assertions made before the federal court poses a significant threat of inconsistent court determinations. *See Whitacre P'ship*, 358 N.C. at 13-14, 591 S.E.2d at 879; *Jones v. Sasser*, 18 N.C. (1 Dev. & Bat. ) 452, 464 (1836) (Estoppel is "*founded* upon the great principles of morality and public policy . . . to prevent that which deals in duplicity and inconsistency."); *see also Cates v. Wilson*, 321 N.C. 1, 18, 361 S.E.2d 734, 744 (1987) (Mitchell, J., concurring in result) ("A lawsuit is not a parlor game . . . ."). Permitting such a conflicting position and inconsistency would serve to undermine public confidence in the judicial process.

In sum, Hartford had ample opportunity to litigate all of its related claims, including those attributable to its assignor Helm and to Hartford individually, by joining the federal action. Hartford elected not to do so. Given the statements made by Hartford's counsel before the federal court and the substantial similarity of its counterclaims, which contest prior adjudicated facts, we conclude that the trial court reasonably invoked judicial estoppel to restrain Hartford from adopting an inconsistent position. *See Whitacre P'ship*, 358 N.C. at 26-27, 591 S.E.2d at 887 (Judicial estoppel serves "as a gap-filler" and is appropriate "where the technical requirements of" its companion estoppel doctrines may not be met.). The trial court did not abuse its discretion and therefore, properly dismissed Hartford's tort counterclaims. Accordingly, we reverse the decision of the Court of Appeals, which reversed the trial court's dismissal of the tort counterclaims.

REVERSED.

Justice ERVIN dissenting

The majority has resolved this case based upon judicial estoppel considerations instead of the collateral estoppel and res judicata principles upon which the dissenting opinion in the Court of Appeals relied in determining that the trial court's order should be upheld. Moreover, in holding that Hartford is judicially estopped from seeking relief from United Bank separate and apart from Helm, the majority

assumes, without demonstrating, that (1) Hartford "collaterally attack[ed] the federal judgment *post hoc*" and (2) attempted to "re-litigat[e] its related claims arising from the same facts." On the contrary, the fact that two different parties have asserted that the same defendant committed the same torts in connection with the same overall transaction does not, at least in my opinion, mean that these parties have asserted identical claims in the event that those claims are supported by different facts. As a result, given that the dissenting opinion in the Court of Appeals, which provides the basis for our jurisdiction over this case, did not rely on judicial estoppel principles in upholding the trial court's decision and my belief that the claims that Hartford seeks to assert against United Bank are fundamentally different from the claims that Helm asserted against that financial institution, I respectfully dissent from the Court's decision with respect to the judicial estoppel issue.

Neither the majority nor the dissenting opinions in the Court of Appeals make any mention of judicial estoppel. *Old Republic Nat'l. Title Ins. Co. v. Hartford Fire Ins. Co.*, --- N.C. App. ---, 785 S.E.2d 185 (2016). "When the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those issues that are (1) specifically set out in the dissenting opinion as the basis for that dissent, (2) stated in the notice of appeal, and (3) properly presented in the new briefs required by Rule 14(d)(1) . . . . N.C. R. App. P. 16(b). Although " '[t]his Court will not hesitate to exercise its rarely used general supervisory authority when necessary to promote the expeditious

administration of justice,' and may do so to 'consider questions which are not properly presented according to [its] rules,' " *State v. Ellis*, 361 N.C. 200, 205, 639 S.E.2d 425, 428 (2007) (brackets in original) (quoting *State v. Stanley*, 288 N.C. 19, 26, 215 S.E.2d 589, 594 (1975)), I am not persuaded that we should do so in this case given the limited extent to which the parties addressed this subject in their briefs. As I read the record, United Bank mentioned the subject of judicial estoppel in an eight line footnote found on the last page of its principal brief in which it made the conclusory assertion that Hartford was not entitled to "represent to the court in the Prior Action that it was not a necessary party and would not collaterally attack the judgment entered in that action and then – three months after the jury verdict – assert identical claims premised on the same facts and issues actually litigated to a final judgment in the Prior Action." (Citing *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 21, 591 S.E.2d 870, 884 (2004)). Although Hartford addressed the judicial estoppel issue in more detail, it did little more than point out that the judicial estoppel issue had not been addressed in the dissenting opinion in the Court of Appeals and was not, for that reason, properly before the Court and to assert that, since it was "prosecuting its own, independent Tort Claims," it was not judicially estopped from pursuing those claims in this case. (Citing *Price v. Price*, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005), and *Whitacre P'ship*, 358 N.C. at 29, 591 S.E.2d at 888-89)). As a general proposition, deciding an issue that has not been fully briefed and argued by the parties involves risks that I see no reason for the Court to take in this case. In addition, I am not

persuaded, and the majority has not demonstrated, that a decision to address and resolve the judicial estoppel issue when it is not properly before us promotes the "expeditious administration of justice." *Ellis*, 361 N.C. at 205, 639 S.E.2d at 428. As a result, I do not believe that we should deviate from our usual practice of refraining from deciding issues that are not properly before us. However, in light of the fact that I disagree with the majority's decision with respect to the judicial estoppel issue as well, I will discuss the merits of the Court's determination that Hartford is judicially estopped from pursuing the claims that it has asserted against United Bank.

The matter before the Court stems from the trial court's decision to grant United Bank's motion for judgment on the pleadings. "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citation omitted). "The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Id.* at 137, 209 S.E.2d at 499 (citing, *inter alia*, *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 61 S. Ct. 418, 85 L. Ed. 577 (1941); *Austad v. United States*, 386 F.2d 147 (9th Cir. 1967)).

A trial court order granting a motion for judgment on the pleadings is reviewed de novo. *See CommScope Credit Union v. Butler & Burke, LLP*, --- N.C. ---, ---, 790 S.E.2d 657, 659 (2016) (citation omitted). "Under the *de novo* standard of review, the [Court] 'consider[s] the matter anew[ ] and freely substitut[es] its own judgment for' [that of the lower court]." *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, --- N.C. ---, ---, 794 S.E.2d 785, 791 (2016) (brackets in original) (quoting *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004)).

Judicial estoppel is "customarily used to promote the fairness and integrity of judicial proceedings." *Whitacre P'ship*, 358 N.C. at 13, 591 S.E.2d at 879. "A party is not permitted to take a position in a subsequent judicial proceeding which conflicts with a position taken by him in a former judicial proceeding, where the latter position disadvantages his adversary." *Id.* at 21, 591 S.E.2d at 884 (quoting *Rand v. Gillette,* 199 N.C. 462, 463, 154 S.E. 746, 747 (1930)). However, "a party may not be judicially estopped to assert 'inconsistent positions with respect to issues that are only superficially similar.' " *Id.* at 16, 591 S.E.2d at 880 (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30, at 134–69 (3d ed. 1997)). In other words, "judicial estoppel is limited to the context of inconsistent factual assertions." *Id.* at 32, 591 S.E.2d at 890. For that reason, in order to invoke judicial estoppel, a party must show that (1) the opposing party "advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet*

*Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996); *see also Wight v. BankAmerica Corp.* 219 F.3d 79, 90 (2d Cir. 2000) (same). In other words, "there must be a true inconsistency between the statements in the two proceedings"; "[i]f the statements can be reconciled there is no occasion to apply an estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72-73 (2d Cir. 1997) (citing, *inter alia, AXA Marine & Aviation*, 84 F.3d at 628). As a general proposition, "a trial court's application of judicial estoppel is reviewed for abuse of discretion." *Whitacre P'ship*, 358 N.C. at 38, 591 S.E.2d at 894 (citation omitted). "Where the essential element of inconsistent positions is not present, it is an abuse of discretion to bar plaintiff's claim on the basis of judicial estoppel." *Estate of Means ex rel. Means v. Scott Elec. Co. Inc.*, 207 N.C. App. 713, 719, 701 S.E.2d 294, 299 (2010) (citation omitted). Thus, the issues before us in this instance are: (1) whether the allegations and admissions in the parties' pleadings, considered in the light most favorable to Hartford, demonstrate that Hartford took inconsistent positions in the related federal case and in this case; and (2) whether the trial court abused its discretion in invoking judicial estoppel to bar the assertion of Hartford's claims. In view of my belief, after reviewing the allegations and admissions in the pleadings in the light most favorable to Hartford, that Hartford has not made inconsistent assertions in the related federal case and this case, I believe that the trial court erred by dismissing Hartford's claims on judicial estoppel grounds.

In the related federal action, Helm asserted claims against United Bank for (1) fraudulent and deceptive conduct, including the intentional misrepresentation and

concealment of material facts from Helm, that constituted unfair and deceptive trade practices; (2) fraud, based upon representations made to Helm by Michael Schornick in a February 2008 letter, by Judy Tackett in July 2009 telephone conversations, and by Kermin Fleming in both a voice mail and telephone conference in July 2009; (3) fraud in the inducement based upon these same representations to Helm; (4) unjust enrichment; and (5) negligent misrepresentation based upon these same representations to Helm.

On 7 June 2013, United Bank filed a motion in the related federal action seeking to have Hartford substituted for Helm as the party plaintiff on the grounds that Hartford, which owned any judgment that Helm might obtain, was the real party in interest. At a hearing held for the purpose of considering various pretrial motions held on 3 July 2013, United States District Judge N. Carlton Tilley, Jr., expressed concern that "Hartford would have some right to come along at a later time and say we're not bound by [the federal court judgment], we own this, and we think Helm should have pursued a different course, we don't think they waived anything that would [a]ffect us." In response, counsel for Hartford informed the federal district court that: (1) "Hartford has no objection with *this case* moving forward without Hartford as a named party to *this litigation*"; and (2) "Hartford . . . will not seek to collaterally attack any judgment entered in *this action*." (Emphases added.) In other words, as the italicized statements make clear, the representations made by Hartford's counsel to the federal district court were strictly limited to the issues

currently before that forum. Shortly thereafter, Hartford's counsel told United Bank's counsel in an e-mail that the representations that she had made to the district court in the federal proceeding did not include any separate claims that Hartford might have against United Bank. More specifically, Hartford's counsel informed counsel for United Bank that, while it "will not seek to re-litigate those claims brought by HELM Builders in" the federal action, "Hartford did not represent to the [federal district court] that it was waiving and/or in any way releasing any claim that it may possess against United Bank from this date until the end of time, whether known or unknown."

About three months after the conclusion of the federal trial, in which the jury returned a verdict in United Bank's favor, Hartford asserted claims against United Bank for (1) fraud, based upon a contention that the 22 February 2008 letter contained representations and omitted material facts that had the effect of making that letter false and misleading so as to deceive *Hartford*; (2) fraud in the inducement, based upon a contention that United Bank had induced Hartford to provide bonding services for the Hotel Indigo project based upon misleading representations and omissions to *Hartford* associated with the 22 February 2008 letter; (3) unfair trade practices, based upon the misleading representations and omissions to *Hartford* associated with the 22 February 2008 letter; and (4) negligent misrepresentation, based upon a contention that United Bank had failed to exercise ordinary care in its communications with *Hartford*. In determining that Hartford is judicially estopped

from asserting these claims based upon the representations that it had made to the district court during the related federal case, the majority has failed to analyze the claims that Hartford has asserted against United Bank in order to ascertain whether they are the same as those that Helm asserted against United Bank. When such an analysis is undertaken, it is clear to me that the claims that Hartford seeks to assert against United Bank in this case are not identical to the claims that Helm asserted against United Bank in the related federal action.

In seeking relief from United Bank, Hartford alleged that, "[p]rior to the issuance of the performance and payment bond," it "required verification and written assurance from the Bank that the Bank had allocated funds from the Construction Loan sufficient to cover and pay to HELM Builders the base scope of the Shrijee Contract—i.e. $13,050,000.00" and that, "prior to February 22, 2008, the Bank knew and understood that HELM Builders' surety had refused to issue the performance and payment bond in the amount of $13,050,000.00 for the Hotel Indigo Project based solely upon the Bank's issuance of the Bank Commitment Letter" and that Hartford "required the Bank to provide assurances that it had allocated funds from the Construction Loan sufficient to cover the base scope of the Shrijee Contract—i.e., $13,050,000.00 in order for Hartford to issue the performance and payment bond." In light of that understanding, United Bank provided a letter from Michael E. Schornick, Jr., an Executive Vice President, to Scott McAllister, who served as Helm's President, dated 22 February 2008 in which Mr. Schornick stated that:

> This letter is to confirm that the financing is available for the Hotel Indigo, Durham, NC project. The minimum of $13,050,000 has been allocated for the contract amount to Helm Builders, LLC for the construction of the project. Direct funding to Helm Builders LLC is contingent upon Shrijee LLC authorization, draw percentages must be commensurate with completion percentage and the standard lien waivers from both Helm and all sub-contractors including vendors. Inspections & payment authorizations will be determined and conducted by a third-party architect.
>
> We understand this letter is to be used to release the Payment and Performance bonds for the construction of this project.

According to Hartford, United Bank "provided the February 2008 Bank Letter to Har[t]ford, in care of HELM Builders, to obtain Hartford's issuance of the requested performance and payment bonds for the construction of the Hotel Indigo Project." However, as Hartford discovered during the trial of the related federal action, United "Bank had not allocated at least $13,050,000 of the Construction Loan for the Shrijee Contract;" "never intended to allocate at least $13,050,000.00 of the Construction Loan for the Shrijee Contract;" and did not "include within the February 2008 Bank Letter sufficient information to put Hartford on notice that the Bank was not financing one hundred percent (100%) of the construction costs for the Hotel Indigo Project" or "to put Hartford on notice that the Bank had not allocated at least $13,050,000 of the Construction Loan for the Shrijee Contract." Hartford contended that it "would not have issued both the Payment and Performance Bonds absent the Bank's express representations to Hartford, set forth in the February 2008 Bank

Letter." As a result, Hartford alleged that it was entitled to recover damages from United Bank for fraud, fraud in the inducement, unfair and deceptive trade practices, and negligent misrepresentation.

The essence of the claim that Hartford seeks to assert against United Bank is that Hartford could have reasonably understood the statements contained in the 22 February 2008 letter to indicate that the bank had committed sufficient funds from the construction loan to pay for the construction of the Hotel Indigo project; that no such commitment had, in fact, been made; and that Hartford would not have provided bonding services for the project had it understood that the bank had not allocated sufficient funds from the construction loan to pay for the construction of the Hotel Indigo. Although Helm had asserted that the 22 February 2008 letter contained misrepresentations as to Helm and that Helm would not have commenced construction had it known that sufficient funds had not been committed from the construction loan to pay the costs that Helm anticipated occurring in connection with the construction of the Hotel Indigo, I do not believe that there is any inconsistency between a representation to a federal district court that Hartford did not intend to collaterally attack or otherwise seek to relitigate claims based upon representations that were allegedly false as to Helm, which Hartford owned by virtue of an assignment that it had received from Helm, and the assertion of claims based upon misrepresentations that were alleged to have been made directly to Hartford, particularly given that this issue is being resolved at the pleading stage without the

benefit of further factual development. As a result, given that the statements made by Hartford to the federal district judge prior to the federal trial were limited to a commitment that Hartford would not attempt to relitigate the claims that Helm had asserted against United Bank and given that the claims that Hartford has asserted against United Bank rest upon alleged misrepresentations made to Hartford rather than to Helm, I do not believe that the undisputed information in the present record provides any basis for a determination that Hartford's representations to the federal district court conflict with the position that Hartford has taken in this case. As a result, since the allegations set out in the parties' pleadings, viewed in the light most favorable to Hartford, provide ample justification for a determination that Hartford did not make inconsistent representations in the related federal case and in this case, I respectfully dissent from the Court's decision to uphold the dismissal of Hartford's claims against United Bank on judicial estoppel grounds.[4]

Justices HUDSON and BEASLEY join in this dissenting opinion.

---

[4] In view of the fact that the Court has not reached the issue of whether Hartford is precluded from asserting its claims against United Bank on collateral estoppel or res judicata grounds, I express no opinion concerning the manner in which that issue should be decided.